FILED ✓    LODGED ___
RECEIVED ___    COPY ___

NOV 27 2019

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

1

2

3

4

5 | Rune Kraft,

6 |          Plaintiff,

7 | vs.

8 | Gainey Ranch Community Association,
Karen Epstein, Jim Funk, Charlene A. Cruz,

9 | Maureen Martha Connolly, Marion

10 | Elizabeth Mulcahy, Paige Elizabeth Marks,
Lauren Ashleigh Vie, and DOES 1-10,

11 | Inclusive,

12

13 |          Defendants.

Civil Case No.:

CV-19-05697-PHX-JJT

COMPLAINT

14

15

16

17

18

19

20

21

22

23

24

25

26

i

**COMPLAINT**

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| 1. | Jurisdiction and Venue | 1 |
| 2. | Parties | 1 |
| 3. | Factual Allegations | 8 |
| 4. | Nature of This Action | 30 |
| 5. | 18 U.S.C. § 1964(A) Gives the U.S. District Court for the District of Arizona Jurisdiction to Prevent and Restrain Violations of 18 U.S.C. 1962 | 34 |
| 6. | 18 U.S.C. § 1964(C) Authorizes RICO's Private Right of Action | 35 |
| 7. | The Association, Its Employees, Its Officers, Its Directors and Its Attorneys Are An "Enterprise". 18 U.S.C. § 1961(4). *United States v. Turkette.* Engaged in or Affecting Interstate Commerce. *United States v. Elliott.* And Concealed Its Acts. *Rotella v. Wood* | 54 |
| 8. | Conspiracy to Commit Mail Fraud, Wire Fraud and Obstruction of Justice. Violation of 18 U.S.C. § 1962(d) | 57 |
| 9. | Mail Fraud. 18 U.S.C. § 1961(1)(B) Predicate Acts (18 U.S.C. § 1341) Violation of 18 U.S.C. §§ 1962(a)(b)(c)(d). | 78 |
| 10. | Wire Fraud. 18 U.S.C. § 1961(1)(B) Predicate Acts (18 U.S.C. § 1343) Violation of 18 U.S.C. §§ 1962(a)(b)(c)(d). | 83 |
| 11. | Obstruction of Justice. 18 U.S.C. § 1961(1)(B) Predicate Acts (18 U.S.C. § 1512(c)). Violation of 18 U.S.C. §§ 1962(a)(b)(c)(d). | 86 |
| 12. | Obstruction of Justice. 18 U.S.C.§ 1961(1)(B) Predicate Acts (18 U.S.C. § 1503). Violation of 18 U.S.C. §§ 1962(a)(b)(c)(d). | 88 |
| 13. | Conspiracy to Commit Money Laundering. 18 U.S.C. § 1961(1)(B) Predicate Acts (18 U.S.C. § 1956(h)) Violation of 18 U.S.C. §§ 1962(a)(b)(c)(d). | 90 |
| 14. | The Defendants Engaged in Racketeering Activity. 18 U.S.C. § 1961(1) | 92 |
| 15. | The Associated-In-Fact Enterprise Engaged in A Pattern of Racketeering Activity. 18 U.S.C. § 1961(5) | 93 |
| 16. | The Racketeering Activity Was Used to Steal Property | 93 |
| 17. | The Stolen Property Was Used to Operate the Associated-In-Fact Ent. | 94 |
| 18. | The Defendants have violated the Racketeer Influenced Corrupt Organization Act. 18 U.S.C. § 1962. | 95 |
| 19. | Plaintiff Has Been Injured in His Business or Property by Reason of a Violation of 18 U.S.C. § 1962 | 97 |
| 20. | Notice of Statute of Limitations | 97 |
| 21. | Notice of Relief | 97 |
| 22. | Plaintiff Has Constitutional Standing. Article III of the U.S. Constitution *Lujan v. Defenders of Wildlife* | 98 |
| 23. | The Complaint Satisfies the Standards Set by the Supreme Court of the United States for Complaints in the Federal Court System. *Twiqbal* | 99 |

ii

# 1. Jurisdiction and Venue

1. The United States District Court for the District of Arizona is the proper venue for this action as the Defendants, each and all of them, are situated in this District and conduct their activities in this District.

2. This court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

# 2. Parties

4. Plaintiff Rune Kraft ("Kraft") resides outside the United States and has several business offices, including in Wilmington, Delaware. He visits Arizona to manage and develop businesses and assets, and seasonally stays in Arizona.

5. Defendant Gainey Ranch Community Association ("Association") is a planned community's property association located in Scottsdale, Arizona. The Association has about 1,000 members (e.g. the planned community has about 1,000 property owners), each paying about $ 500 per month to the Association. This property association, with monthly revenues of about $ 500,000, is thus large by property association standards in Arizona, and has access to significant resources. The Association's activities are regulated by the State of Arizona: The Arizona Planned Community Statutes - A.R.S. §§ 33-1801, et seq.; The Arizona Condominium Act - A.R.S. §§ 33-1201, et seq.; and The

1

Arizona Nonprofit Corporations Act - A.R.S. §§ 10-3101 through 10-11031. The Association can also conduct its activities based on its Covenants, Conditions, and Restrictions, but only to the extent that these terms obey Arizona law.

6. Defendant Karen Epstein has been the President of the Association since 2017 and a Director since 2013, pursuant to the records of the Arizona Corporation Commission. Ms. Epstein exact employment relationship with the Association, including if she is a full-time employee of the Association, is not known for certain by Plaintiff.

7. Defendant Jim Funk has been the Secretary of the Association since 2008, pursuant to the records of the Arizona Corporation Commission. Plaintiff believes that Mr. Funk has also been the Association's sole Executive Director since 2008. As the Executive Director of the Association Mr. Funk is a full-time employee of the Association and runs the day to day operations of the Association, including supervising on a daily basis the Association's employees and contracted individuals and entities.

8. Defendant Charlene A. Cruz has been one of the Association's attorneys, including in connection with a fraudulent public recording.

9. Defendant Maureen Martha Connolly has been one of the Association's attorneys, including in connection with a fraudulent public recording.

10. Defendant Marion Elizabeth Mulcahy has been one of the Association's attorneys.

11. Defendant Paige Elizabeth Marks has been one of the Association's attorneys.

12. Defendant Lauren Ashleigh Vie has been one of the Association's attorneys.

**COMPLAINT**

13. The attorney Defendants are subject to regulation by the State Bar of Arizona (Arizona Rules of Professional Conduct) and Rules of the Supreme Court of Arizona. to protect the public and the administration of justice from attorneys who have not discharged their professional duties to clients, the public, the legal system, and the legal profession. The professional conduct of attorneys and the discipline process is governed by Rules 41-74, Arizona Rules of the Supreme Court. Pursuant to the Arizona Rules of

**COMPLAINT**

Professional Conduct [1] [2] [3] [4] [5] [6] [7] [8], the attorney Defendants have no lawful client

relationships related to this matter. Under ER 1.2(d) they are explicitly and specifically

---

[1] Arizona Rules of Professional Conduct, PREAMBLE, SCOPE, AND TERMINOLOGY,
A LAWYER'S RESPONSIBILITIES: [1] A lawyer, as a member of the legal profession, is a representative of clients, an officer of the legal system and a public citizen having special responsibility for the quality of justice. Whether or not engaging in the practice of law, lawyers should conduct themselves honorably; [3] In addition to these representational functions, a lawyer may serve as a third-party neutral, a nonrepresentational role helping the parties to resolve a dispute or other matter. Some of these Rules apply directly to lawyers who are or have served as third-party neutrals. See, e.g., ERs 1.12 and 2.4. In addition, there are Rules that apply to lawyers who are not active in the practice of law or to practicing lawyers even when they are acting in a nonprofessional capacity. For example, **a lawyer who commits fraud in the conduct of a business is subject to discipline for engaging in conduct involving dishonesty, fraud, deceit or misrepresentation**. See ER 8.4. (bold and underline added)

[2] Arizona Rules of Professional Conduct, ER 1.0 TERMINOLOGY: (a) "Belief" or "believes" denotes that the person involved actually supposed the fact in question to be true. A person's belief may be inferred from circumstances; (d) **"Fraud" or "fraudulent" denotes conduct that is fraudulent under the substantive or procedural law of the applicable jurisdiction and has a purpose to deceive**; (f) "Knowingly," "known," or "knows" denotes actual knowledge of the fact in question. A person's knowledge may be inferred from circumstances; (h) "Reasonable" or "reasonably" when used in relation to conduct by a lawyer denotes the conduct of a reasonably prudent and competent lawyer; (i) "Reasonable belief" or "reasonably believes" when used in reference to a lawyer denotes that the lawyer believes the matter in question and that the circumstances are such that the belief is reasonable; (m) "Tribunal" denotes a court, an arbitrator in an arbitration proceeding or a legislative body, administrative agency or other body acting in an adjudicative capacity. A legislative body, administrative agency or other body acts in an adjudicative capacity when a neutral official, after the presentation of evidence or legal argument by a party or parties, will render a legal judgment directly affecting a party's interests in a particular matter. (bold and underline added)

[3] Arizona Rules of Professional Conduct, ER 1.2 SCOPE OF REPRESENTATION AND ALLOCATION OF AUTHORITY BETWEEN CLIENT AND LAWYER: (d) **A lawyer**

4

**shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent**, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law. (bold and underline added)

[4] Arizona Rules of Professional Conduct, ER 1.6 CONFIDENTIALITY OF INFORMATION: (d) A lawyer may reveal such information relating to the representation of a client to the extent the lawyer reasonably believes necessary: (1) **to prevent the client from committing a crime or fraud that is reasonably certain to result in substantial injury to the financial interests or property of another and in furtherance of which the client has used or is using the lawyer's services**;(2) **to mitigate or rectify substantial injury to the financial interests or property of another that is reasonably certain to result or has resulted from the client's commission of a crime or fraud in furtherance of which the client has used the lawyer's services**. (bold and underline added)

[5] Arizona Rules of Professional Conduct, ER 1.16 DECLINING OR TERMINATING REPRESENTATION: (a) Except as stated in paragraph (c), **a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if: (1) the representation will result in violation of the Rules of Professional Conduct or other law**; (b) Except as stated in paragraph (c), a lawyer may withdraw from representing a client if: (2) the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent; (3) the client has used the lawyer's services to perpetrate a crime or fraud. (bold and underline added)

[6] Arizona Rules of Professional Conduct, ER 3.3 CANDOR TOWARD THE TRIBUNAL: (b) **A lawyer who represents a client in an adjudicative proceeding and who knows that a person intends to engage, is engaging or has engaged in criminal or fraudulent conduct related to the proceeding shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal.** (bold and underline added)

[7] Arizona Rules of Professional Conduct, ER 4.1 TRUTHFULNESS IN STATEMENTS TO OTHERS: **In the course of representing a client a lawyer shall not knowingly: (b) fail to disclose a material fact when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client**, unless disclosure is prohibited by ER 1.6. (bold and underline added)

5

prohibited from counseling or assisting a client in conduct that they know is criminal or fraudulent.

14. The State Bar of Arizona proclaims that its mission is:

"Protecting the Public While Advancing the Legal Profession"

https://www.azbar.org/

15. The Oath of Admission to the State Bar of Arizona, Rule 34 of the Arizona Supreme Court, requires as a prerequisite to being member of the State Bar of Arizona, to: "support the constitution and laws"; "not counsel or maintain any action, proceeding, or defense that lacks reasonable basis in fact or law"; "avoid engaging in unprofessional conduct"; "not advance any fact prejudicial to the honor or reputation of a party"; "support the fair administration of justice, professionalism among lawyers"; and "at all times faithfully and diligently adhere to the rules of professional responsibility and A Lawyers Creed of Professionalism of the State Bar of Arizona". The State Bar's Lawyers Creed states: in Section A that concerns clients "I will advise my client against pursuing litigation (or any other course of action) that is without merit and I will not

---

[8] Arizona Rules of Professional Conduct, ER 8.4 MISCONDUCT: **It is professional misconduct for a lawyer to**: (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; (c) **engage in conduct involving dishonesty, fraud, deceit or misrepresentation**; (d) **engage in conduct that is prejudicial to the administration of justice**. (bold and underline added)

**COMPLAINT**

engage in tactics that are intended to delay the resolution of a matter or to harass or drain the financial resources of the opposing party"; in Section B that concerns opposing parties "I will not knowingly make statements of fact or of law that are untrue" and "I will not utilize litigation or any other course of conduct to harass the opposing party"; and in Section C that concerns the courts states "I will voluntarily withdraw claims or defenses when it becomes apparent that they do not have merit", "I will not file frivolous motions" and "I will at all times be candid with, and respectful to, the tribunal".

16. The attorney Defendants are also officers of the court, which mandate strict adherence with a series of requirements for conduct. For example, at this court, FRCP Rule 11(b).

REPRESENTATIONS TO THE COURT. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

17. The attorney Defendants cannot further fraud and/or represent anybody to further fraud.

7

## 3. Factual Allegations

18. Since December 1, 2015, Plaintiff has been involved with litigation with the Association related to a real property[9] located in the planned community known as Gainey Ranch. The Defendants fabricated a dispute implicating Kraft, out of thin air, for the purpose of conjure up a way to initiate a legal proceeding against Kraft. The Association's action, and the Association's acts and practices related to the action, are fundamentally fraudulent, libelous and malicious. The action is wrong as a matter of both fact and law, and for these reasons, that litigation ("Association action" or "Association litigation") is ongoing.

19. The true and correct facts related to this matter are as follows:

|  | Undisputed |
|---|---|
| Plaintiff sold the property to a corporation on May 19, 2011 | YES |
| Plaintiff's sale cannot be set aside because no money was owed | YES |
| The Assoc. had received all monthly assessment from this corporation | YES |

---

[9] Lot One Hundred (100), THE PAVILIONS AMENDED, as set forth in Declaration of Horizontal Property Regime recorded March 20, 1985 in Document No. 85-120639 and Amended in Document No. 85-287726, and Amended in Document No. 85-561482, and re-recorded in Document No. 88-489865, and according to the plat of record in the office of the County Recorder in Maricopa County, Arizona, in Book 280 of Maps, page 26, and Plat recorded in Book 282 of Maps, page 50;  TOGETHER WITH the undivided interest in and to the common elements appurtenant to each unit.

COMPLAINT

20. These three facts show that: (A) Plaintiff has no contract with the Association and it follows that he cannot have breached a contract with the Association; (B) the Association has no standing to sue because the Association has not suffered an injury [10]; and (C) the action the Association filed against Plaintiff is a hoax and the purpose of this fraudulent scheme is to harass him, smear his good name, and use the court as a conduit of theft of Kraft's business and property, including his time.

---

[10] The Association have made things up and lied about having a contract with Kraft and having suffered an injury in fact. The Association, *sans* making things up and lying: cannot allege an invasion of a legally protected interest which is concrete and particularized, and actual or imminent, not conjectural or hypothetical; cannot allege specifically how the injury is traceable to the challenged actions of Kraft; cannot be redressed in an action against Kraft who has no contracts with the Association; and cannot be redressed by a court due to no injury in fact. The elements for standing were not met. The use of Arizona's courts requires standing. *See Bennett v. Brownlow*, 211 Ariz. 193, 195 ¶ 14, 119 P.3d 460, 462 (2005); *see also Sears*, 192 Ariz. at 71 ¶ 24, 961 P.2d at 1019 (citing *Amory Park Neighborhood Ass'n v. Episcopal Cmty. Services In Arizona*, 148 Ariz. 1, 6, 712 P.2d 914, 919 (1985). And the standing requirement is "rigorous." *See Fernandez v. Takata Seat Belts, Inc.*, 210 Ariz. 138, 140 ¶ 6, 108 P.3d 917, 919 (2005). "To gain standing to bring an action, a plaintiff must allege a distinct and palpable injury." *Sears*, 192 Ariz. at 69 ¶ 16, 961 P.2d at 1017. There must be "an injury in fact, economic or otherwise, caused by the complained-of conduct, and resulting in a distinct and palpable injury . . . ." *Strawberry Water Co. v. Paulsen*, 220 Ariz. 401, 406 ¶ 8, 207 P.3d 654, 659 (App. 2008). An injury sufficient to confer standing must be "particularized" and to the plaintiffs "themselves." *Arizona Ass'n of Providers for Persons with Disabilities v. State*, 223 Ariz. 6, 13 ¶ 17, 219 P.3d 216, 223 (App. 2009). The Association has not been using Arizona courts to prosecute claims; rather they have been concocting fraudulent schemes to systematically use false and misleading representations and illegal practices to have Arizona courts coerce Kraft to pay them for using Arizona courts to harass him, which perverts the use of the Judicial Branch of Arizona, Maricopa County and is an affront to and undermines its publicly stated guarantee "committed to excellence and the principles inherent in the rule of law … every person, every day, every time". *See* https://superiorcourt.maricopa.gov.

21. The contractual obligations between an association of property owners in a planned community and the property owners in the planned community rest on the premise of shared property ownership of common areas, such as gates, roads, pathways, parks, gardens, "club" type facilities, indoor and outdoor exercise facilities, recreation areas, etc. and shared responsibilities, such as security, maintenance, periodic capital improvements and community administration.

22. Kraft has not been the owner of this real property at Gainey Ranch since May 19, 2011 and has thus not made any payments to the Association since May 2011.

23. These issues were adjudicated in a trial on November 28, 2016.

24. The records and statements, the facts, of the November 26, 2016 trial have not changed. The controversy is founded on property ownership and a dispute over payments of monthly assessments to the Association (about $ 450 per month) from April 2015, which Kraft proved at the trial, **is not his contractual obligation as he has not been the real property owner since May 19, 2011, and at that time no assessments were owed**, and as Kraft proved at the trial, **the Association's allegation of not having received the payments of the monthly assessments from April 2015 to at the time the trial date, was false as the Association had received the payments from the property owner, the corporation Kraft sold the property to on May 19, 2011.**

25. For obvious reasons, nobody from the Association - no employee, no officer, no director – has contradicted these basic and specific facts, and the only records that the Association's attorneys have produced are **statements the Association's attorneys**

COMPLAINT

**issued and signed,** However, these purported statements from the Association to Kraft showing that Kraft did not make any payments from April 2015, payments he has had no contractual obligations to make since May 19, 2011, **were not sent to Kraft.**

26. Specifically, Kraft, an individual, does not own this real property at Gainey Ranch. The alleged entity Transcycle, an unincorporated entity and/or a dba of Kraft, does not this real property at Gainey Ranch, never has. And Transcycle, the so-called unincorporated entity and or a dba of Kraft, does not exist, never has.

27. And the Defendants knew and know: based on the exchange of documents prior to the trial on November 26, 2016; the records and statements, the facts, of the November 26, 2016 trial; and the payments the Association has been receiving from the corporation Transcycle from May 2011 through February 2018 that Transcycle is a corporation. Based on this interaction over almost 7 years the Association and its attorneys knew and know that Transcycle is a corporation incorporated on 07/11/1994 and that Transcycle the corporation had been the sole owner of the property in question since May 19, 2011.

28. The Association action has nothing to do with any genuine grievances of the Association, rather **this is about harassing Kraft and generating purported valid attorneys' fees and costs**; and

**THE ASSOCIATION ACTION RESTS ON A FABRICATED DISPUTE AND IS A HOAX.**

11

# THE TRUE AND CORRECT PAYMENT HISTORY *

Monthly
Assessments

| | | | |
|---|---|---|---|
| 2015 | April | 456.00 | Received by Assoc. on 07.31.15 |
| | May | 456.00 | Received by Assoc. on 07.31.15 |
| | June | 456.00 | Received by Assoc. on 07.31.15 |
| | July | 456.00 | Received by Assoc. on 07.31.15 |
| | August | 456.00 | Received by Assoc. on 08.12.15 |
| | September | 456.00 | Received by Assoc. on 09.05.15 |
| | October | 456.00 | Received by Assoc. on 10.07.15 |
| | November | 456.00 | Received by Assoc. on 11.09.15 |
| | December | 456.00 | Received by Assoc. on 12.03.15 |
| 2016 | January | 465.00 | Received by Assoc. on 01.08.16 |
| | February | 465.00 | Received by Assoc. on 02.12.16 |
| | March | 465.00 | Received by Assoc. on 03.12.16 |
| | April | 465.00 | Received by Assoc. on 04.15.16 |
| | May | 465.00 | Received by Assoc. on 05.11.16 |
| | June | 465.00 | Received by Assoc. on 06.11.16 |
| | July | 465.00 | Received by Assoc. on 07.11.16 |
| | August | 465.00 | Received by Assoc. on 08.12.16 |
| | September | 465.00 | Received by Assoc. on 09.12.16 |
| | October | 465.00 | Received by Assoc. on 10.13.16 |
| | November | 465.00 | Received by Assoc. on 11.16.16 |
| | December | 465.00 | Received by Assoc. on 12.09.16 |
| 2017 | January | 471.00 | Received by Assoc. on 01.11.17 |
| | February | 471.00 | Received by Assoc. on 02.09.17 |
| | March | 471.00 | Received by Assoc. on 03.10.17 |
| | April | 471.00 | Received by Assoc. on 04.12.17 |
| | May | 471.00 | Received by Assoc. on 05.15.17 |
| | June | 471.00 | Received by Assoc. on 06.10.17 |
| | July | 471.00 | Received by Assoc. on 07.13.17 |
| | August | 471.00 | Received by Assoc. on 08.12.17 |
| | September | 471.00 | Received by Assoc. on 09.11.17 |
| | October | 471.00 | Received by Assoc. on 10.13.17 |
| | November | 471.00 | Received by Assoc. on 11.11.17 |
| | December | 471.00 | Received by Assoc. on 12.11.17 |
| 2018 | January | 482.00 | Received by Assoc. on 01.11.18 |
| | February | 482.00 | Received by Assoc. on 02.10.18 |

COMPLAINT

* The true and correct payment history, the fact that the property owner, the corporation Kraft sold the property to on May 19, 2011, had made all the monthly payments related to the assessments in full and in a timely manner for the relevant period, has been entered into the records of the Association action on multiple occasions, including by Kraft under penalty of perjury. The above cited details can be found in Doc. No. 289 of the Association action. The April, May and June 2015 payments were withheld by the property owner due to the Association's defacing and damaging of property and tampering with property so as to substantially impair its function or value. On July 8, 2015 the property owner invoked Article VIII Section 5 of the By-laws of The Pavilions and informed Gainey Ranch that it wished to submit the matter to the chairperson of the Dispute Resolution Committee.

29. Thus, at the same time that the Association has accused Kraft of not making payments, it had received the payments from the property owner.

30. The true and correct procedural facts in the Association litigation are as follows:

|  | Undisputed |
|---|---|
| It is one action or lawsuit or case that commenced August 31, 2015 | YES |
| Trial was held on November 28, 2016 | YES |
| Kraft was dismissed from the Association action on January 4, 2017 | YES |
| Kraft filed a motion to dismiss on June 30, 2017 at the district court | YES |
| On July 14, 2017 the superior court issued a standing order which declared that a status conference was to be held <u>October 27, 2017</u> and ordered the parties <u>not to file any new motions before this status conference</u> | YES |
| On September 26, 2017 the district court denied Kraft's motion to dismiss | YES |
| On September 27, 2017 the Association filed applications for default and entry of default | YES |
| On October 2, 2017 the superior court stated that it would take no action on the Association's applications for default and entry of default | YES |

13

**COMPLAINT**

| | |
|---|---|
| Kraft was never subsequently served with any applications for default | YES |
| The Association filed a series of motions, including motions related to a default hearing, that violated the July 14, 2017 standing order not to file any new motions before this status conference | YES |

31. The Association action is ongoing as it involves issues of far-reaching implications as the courts of the State of Arizona have chosen lawlessness and corruption, rule of deals and due process of deals, rather than the rule of law and due process of law. And this is not a matter of a single incident and the law being murky.

32. *First*, on January 4, 2017 an order of dismissal without prejudice was issued. It is black letter law, it is a universally applied standard in America's court system, both Federal and State, including the State of Arizona, that a court loses its jurisdiction upon the issuance of an order of dismissal without prejudice. Arizona statutory law explicitly proclaims that the remedy to a plaintiff after an order of dismissal without prejudice is to file a new lawsuit. *See* Justice Court Rules of Civil Procedure Rule 144 f. And that Arizona requires a process other than what has occurred in the Association action is confirmed by numerous cases. Thus, this is a well-known legal standard. The law is not murky, and the Arizona courts have acted in defiance.

33. *Second*, the Arizona courts' acts following the order of dismissal were without jurisdiction and are nullities. This is black letter law. They are not voidable, but simply void, and form no bar to a remedy sought in opposition to them, even prior to a reversal.

**COMPLAINT**

They constitute no justification, and all persons concerned in executing such judgments or sentences are considered in law as trespassers.

34. As the Arizona courts lacked jurisdiction, the remaining issues are essentially nullities. And Kraft has labeled this scheme as rule of deals because it is based on deals not law and the rule of law.

35. Third, fraud upon the court has been committed, serially. Fundamentally the Association action is a hoax, which is fraud upon the court: Kraft had no obligation to pay the Association and its attorneys anything; and the Association had received the payments that Kraft allegedly had an obligation to pay.  The Association's attorneys request for attorneys' fees is an absurdity as they are essentially asking to get paid for their time in creating and implementing a total hoax, and the scheme has been sustained by not serving court filings on Kraft when they knew Kraft would rebut their court filings and take exception, like the  order the Association secured to transfer the action from the justice court to the superior court..

36. Fourth, intentionally creating and using the fraudulent premise that Kraft had not filed a motion to dismiss and that a motion to dismiss is not a defense that may be asserted. See Arizona Rules of Civil Procedure for the Superior Courts of Arizona Rule 12(b). Kraft had not failed to plead or otherwise defend. See Ariz. R. Civ. P. 55(a)(1).

37. Fifth, using a deal that there is no time to act if a motion to dismiss is denied when the law states there is. See Federal Rules of Civil Procedure Rule 12(4)(A) and Arizona Rules of Civil Procedure for the Superior Courts of Arizona Rule 12(a)(2)(A).

**COMPLAINT**

38. <u>Sixth</u>, intentionally undermining the integrity of the judicial process by not accepting the explicit text of a court order. *See* the July 14, 2017 court order.

39. <u>Seventh</u>, using a deal that the text of an order does not mean the plain meaning of the words. *See* the September 29, 2017 order (filed with the superior on October 2, 2017) denying the Association's Applications for Entry of Default.

40. <u>Eighth</u>, using a deal that an application for default does not need to comply with Rule 55(a)(2).

41. <u>Ninth</u>, intentionally creating and using the fraudulent premise that Kraft had not filed a motion to set aside a default/default judgment and that the motion detailed that the Court's procedural posture was clearly untenable, legally incorrect, <u>and</u> amount to a denial of justice when the legal standard is clearly untenable, legally incorrect, <u>or</u> amount to a denial of justice. *Charles I. Friedman, P.C. v. Microsoft Corp.*, 213 Ariz. 344, 350, ¶ 17, 141 P.3d 824, 830 (App.2006) (quoting *State v. Chappie*, 135 Ariz. 281, 297 n.18, 660 P.2d 1208, 1224 n.18 (1983)).

42. <u>Tenth</u>, the superior court habitually issued orders that were not fact based and without applying law to specific facts.

43. <u>Eleventh</u>, intentionally creating and using the fraudulent premise that Kraft did not have a right to defend himself. Kraft has no obligations of any kind to the Association and/or its attorneys, let alone any responsibility for paying for the time and costs of the Association's attorneys' false and fraudulent efforts and court filings.

**COMPLAINT**

44. <u>Twelfth</u>, the superior court's failure to sign its minute entries was improper when Rule 58 (b) states that minute entries must be signed to make them appealable. The superior court neither produced signed minute entries in a concurrent manner, nor produced signed minute entries when specifically requested to correct these deficiencies, after Kraft specifically requested that every minute entry be signed. A court order should contain specific text followed by the signature of a named judicial officer, done concurrently, not in the manner the May 31, 2018 minute entry was done, and pursuant to what authority can a commissioner sign an order purportedly issued by a judge, the January 22, 2018 minute entry? Kraft's constitutional due process rights are violated when Rule 58(b) states that minute entries must be signed to make them appealable and the superior court is not providing signed minute entries. It is process inconsistent with both the Federal Constitution's Due Process Clause of the Fifth Amendment and the Arizona Constitution's Article II Section 4 "Due process of law". Furthermore, a commissioner is not a superior court judge and/or a judge pro tempore as the panel decision erroneously states. A commissioner has no authority to sign purported orders issued by a superior court judge, concurrently or retroactively.  And a commissioner has no authority to violate the orders of a superior court judge. *See* the July 14, 2017 court order. Under Arizona law commissioners have a mandate to handle uncontested matters, and the Association case is certainly not an uncontested matter.

45. For these reasons, the Association matter is subject to ongoing litigation.

17

**COMPLAINT**

46. Related to the Association action the Defendants have brought in issues from a matter that Kraft worked on several years ago in California, the Inland action. For that reason, Plaintiff wants to outline the true and correct facts related to the Inland action.

47. On December 17, 2007, the Inland Concrete Enterprises, Inc. Employee Stock Ownership Plan ("Inland ESOP") completed a transaction in which it sold 100% of its shares in Inland Concrete Enterprises, Inc., a company based in Riverside, California.

48. On March 11, 2010 the Inland ESOP filed a lawsuit against Kraft and Kraft Americas, L.P. claiming that it had hired Kraft and Kraft Americas, L.P. to render brokerage services related to this purported transaction that occurred in California.

49. Devoid of a signed written contract, which does not exist and has never existed, any claims of having hired Kraft and Kraft Americas, L.P. to render brokerage services, must be based on an oral contract. Section 339 of California's Code of Civil Procedure establishes a two-year statute of limitations for oral contracts. It requires a plaintiff to file a lawsuit within two years of the alleged breach, or similar event, of an oral contract. The Inland ESOP would thus have had to file the lawsuit before December 17, 2009 and the lawsuit was filed on March 11, 2010. Thus, the court lacked subject matter jurisdiction. Judgments produced by courts that do not have subject matter jurisdiction aren't voidable, the judgments are void.

50. The Inland ESOP never hired Kraft and Kraft Americas, L.P. to render brokerage services related to the December 17, 2007 transaction in which it sold 100% of its shares in Inland Concrete Enterprises, Inc. California law applies to the December 17,

18

**COMPLAINT**

2007 transaction and requires a broker contract to be in writing and signed by the parties (*See* California Business and Professions Code Sections 10176 (a) and (d), California Civil Code Sections 1624, 2079.13 et seq., 2295 et seq., among others. *Also see Phillippe v. Shapell Industries* (1987) 43 Cal. 3d 1247,1255-1258). When California law requires a broker contract to be in writing and signed by the parties, and no such contract exists and has never existed, the court lacked subject matter jurisdiction.

51. The Inland ESOP has never paid Kraft and Kraft Americas, L.P. anything.

52. The purported broker contract between the Inland ESOP and Kraft and Kraft Americas, L.P. was never formed, and therefore do not exist, because: (a) the three elements for a contract to be valid (an offer; acceptance of that offer; and consideration) were missing; (b) as California law required a broker contract to be in writing and (c) as no written contract exists and has never existed.

53. The Inland ESOP had suffered no damages.

54. The true transaction documents show that the Inland ESOP had not only suffered no damages but had gained $ 3 million.

| Inland ESOP's representations to the court | The true transaction documents [11] |
|---|---|
| The Inland ESOP was shortchanged | The Inland ESOP received "too good a deal" |
| The Inland ESOP was deprived of $ 3 million | The Inland ESOP was given $ 3 million |
| The buyer was really willing to pay $ 3 million more to the Inland ESOP | The buyer was not only unwilling to pay $ 3 million more but wanted to pay $ 3 million less |
| The Inland ESOP had entered into a broker contract with Kraft Americas, L.P. | The Inland ESOP had not entered into a broker contract with Kraft Americas, L.P. |
| Kraft Americas, L.P. was named as the transaction | Kraft was named as the broker in the broker in the transaction |
| The Inland ESOP had established a broker relationship | Kraft was never hired to be the broker Kraft had not consented to be the broker |

55. Article III, § 2 of the United States Constitution reserves the right to use federal courts to entities that have suffered an injury in fact. A case or controversy must comprise an actual injury that can be redressed. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) at p559. Related to the lawsuit that the Inland ESOP filed on March 11, 2010 the Inland ESOP withheld decisive evidence and made fraudulent and misleading representations about this evidence. A default judgment issued by a court that lacked subject matter jurisdiction due to the absence of constitutional standing is void. Thus, any

---

[11] Subject of a protective order in another legal proceeding. As Kraft and Kraft Americas, L.P. are not parties in the transaction, any release of the documents would have to be done through a court order or by the parties themselves.

**COMPLAINT**

efforts to collect money based on the June 22, 2011 default judgment is without any factual and legal basis. Any such efforts by the Inland ESOP are not justified based on equity. Any such efforts by the Inland ESOP are not justified based on the facts and the application of law to the facts. Without an injury, constitutional standing was absent, and the court lacked subject matter jurisdiction.

56. The six electronic files the Inland ESOP's attorneys received from Kraft as part of discovery in Case No. CV10-1776 VBF-OP did not contain the anomalies portrayed in court filings. In Case No. CV10-1776 VBF-OP on November 15, 2010, the Inland ESOP's attorneys received six electronic documents from Kraft. The electronic documents were delivered personally by Kraft to Cesar M. Ibanez, an assistant to the Inland ESOP's attorneys, on a CD at 11755 Wilshire Blvd., 10th Floor, Los Angeles, CA 90025 at about 2:00 PM. The six electronic files showed the true times that Kraft had: created, modified, accessed and printed the six electronic documents and that Kraft had: created, modified, accessed and printed the six electronic documents contemporaneously, as Kraft actually performed the tasks. This CD was ordered by the Inland ESOP's attorneys as part of discovery in the legal proceeding at the court and Kraft swore under penalty of perjury that the facts contained on the CD were true.

RE: "Inland Fee Agreement – May 13, 2007 – Draft.doc"

These are the true facts:

Created: Thursday, May 17, 2007 9:16:00 AM
Modified: Thursday, May 17, 2007 9:54:02 AM
Accessed: Thursday, May 17, 2007 9:54:02 AM
Printed: Thursday, May 17, 2007 9:53:00 AM

21

**COMPLAINT**

Court filings were made that incorrectly portrayed the printout of "statistics" for this electronic document as follows:

Created: Thursday, May 17, 2007 9:16:00 AM
Modified: Thursday, May 17, 2007 5:54:02 AM
Accessed: Thursday, October 28, 2010 3:16:48 AM
Printed: Thursday, May 17, 2007 9:53:00 AM

The following specific facts were falsified:

Created: Thursday, May 17, 2007 9:16:00 AM
Modified: Thursday, May 17, 2007 5:54:02 AM          Four hours earlier*
Accessed: Thursday, October 28, 2010 3:16:48 AM      Year, date and time*
Printed: Thursday, May 17, 2007 9:53:00 AM

* The electronic document was forged to falsely portray as having been "Modified" 4 hours before it was "Created" by Kraft and "Accessed" about 3.5 years after it was last "Modified" and "Printed" by Kraft.

RE: "Inland Fee Agreement - May 13, 2007.doc"

These are the true facts:

Created: Thursday, May 31, 2007 2:03:00 PM
Modified: Thursday, May 31, 2007 2:25:52 PM
Accessed: Thursday, May 31, 2007 2:25:52 PM
Printed: Thursday, May 31, 2007 2:25:00 PM

Court filings were made that incorrectly portrayed the printout of "statistics" for this electronic document as follows:

Created: Thursday, May 31, 2007 2:03:00 PM
Modified: Thursday, May 31, 2007 10:25:52 AM
Accessed: Thursday, October 28, 2010 3:16:48 AM
Printed: Thursday, May 31, 2007 2:25:00 PM

The following specific facts were falsified:

Created: Thursday, May 31, 2007 2:03:00 PM
Modified: Thursday, May 31, 2007 10:25:52 AM          Four hours earlier*
Accessed: Thursday, October 28, 2010 3:16:48 AM       Year, date and time*
Printed: Thursday, May 31, 2007 2:25:00 PM

22

* The electronic document was forged to falsely portray as having been "Modified" 4 hours before it was "Created" by Kraft and "Accessed" about 3.5 years after it was last "Modified" and "Printed" by Kraft.

RE: "Letter to Inland – August 2, 2007.doc"

These are the true facts:

Created: Thursday, August 02, 2007 10:25:00 AM
Modified: Thursday, August 02, 2007 10:38:00 AM
Accessed: Thursday, August 02, 2007 10:38:00 AM
Printed: Thursday, August 02, 2007 10:37:00 AM

Court filings were made that incorrectly portrayed the printout of "statistics" for this electronic document as follows:

Created: Thursday, August 02, 2007 10:25:00 AM
Modified: Thursday, August 02, 2007 6:38:00 AM
Accessed: Thursday, October 28, 2010 3:16:48 AM
Printed: Thursday, August 02, 2007 10:37:00 AM

The following specific facts were falsified:

Created: Thursday, August 02, 2007 10:25:00 AM
Modified: Thursday, August 02, 2007 6:38:00 AM          Four hours earlier*
Accessed: Thursday, October 28, 2010 3:16:48 AM          Year, date and time*
Printed: Thursday, August 02, 2007 10:37:00 AM

* The electronic document was forged to falsely portray as having been "Modified" 4 hours before it was "Created" by Kraft and "Accessed" about 3.2 years after it was last "Modified" and "Printed" by Kraft.

RE: "Letter to Inland – May 17, 2007.doc"

These are the true facts:

Created: Thursday, May 17, 2007 10:03:00 AM
Modified: Thursday, May 17, 2007 10:15:30 AM
Accessed: Thursday, May 17, 2007 10:15:30 AM
Printed: Thursday, May 17, 2007 10:13:00 AM

23

Court filings were made that incorrectly portrayed the printout of "statistics" for this electronic document as follows:

Created: Thursday, May 17, 2007 10:03:00 AM
Modified: Thursday, May 17, 2007 6:15:30 AM
Accessed: Thursday, October 28, 2010 3:16:48 AM
Printed: Thursday, May 17, 2007 10:13:00 AM

The following specific facts were falsified:

Created: Thursday, May 17, 2007 10:03:00 AM
Modified: Thursday, May 17, 2007 6:15:30 AM              Four hours earlier*
Accessed: Thursday, October 28, 2010 3:16:48 AM          Year, date and time*
Printed: Thursday, May 17, 2007 10:13:00 AM

* The electronic document was forged to falsely portray as having been "Modified" 4 hours before it was "Created" by Kraft and "Accessed" about 3.5 years after it was last "Modified" and "Printed" by Kraft.

RE: "Letter to Inland – May 31, 2007.doc"

These are the true facts:

Created: Thursday, May 31, 2007 3:13:00 PM
Modified: Thursday, May 31, 2007 3:32:56 PM
Accessed: Thursday, May 31, 2007 3:32:56 PM
Printed: Thursday, May 31, 2007 3:32:00 PM

Court filings were made that incorrectly portrayed the printout of "statistics" for this electronic document as follows:

Created: Thursday, May 31, 2007 3:13:00 PM
Modified: Thursday, May 31, 2007 11:32:56 AM
Accessed: Thursday, October 28, 2010 3:16:48 AM
Printed: Thursday, May 31, 2007 3:32:00 PM

The following specific facts were falsified:

Created: Thursday, May 31, 2007 3:13:00 PM
Modified: Thursday, May 31, 2007 11:32:56 AM              Four hours earlier*
Accessed: Thursday, October 28, 2010 3:16:48 AM          Year, date and time*
Printed: Thursday, May 31, 2007 3:32:00 PM

24

**COMPLAINT**

\* The electronic document was forged to falsely portray as having been "Modified" 4 hours before it was "Created" by Kraft and "Accessed" about 3.5 years after it was last "Modified" and "Printed" by Kraft.

RE: "Inland Fee Agreement – July 31, 2007.doc"

These are the true facts:

Created: Thursday, July 25, 2002 8:32:00 AM
Modified: Thursday, August 2, 2007 10:12:58 AM
Accessed: Thursday, August 2, 2007 10:12:58 AM
Printed: Thursday, August 2, 2007 10:12:00 AM

Court filings were made that incorrectly portrayed the printout of "statistics" for this electronic document as follows:

Created: Thursday, July 25, 2002 8:32:00 AM
Modified: Thursday, August 2, 2007 6:12:58 AM
Accessed: Thursday, October 28, 2010 3:16:48 AM
Printed: Thursday, August 2, 2007 10:12:00 AM

The following specific facts were falsified:

Created: Thursday, July 25, 2002 8:32:00 AM
Modified: Thursday, August 2, 2007 6:12:58 AM        Four hours earlier\*
Accessed: Thursday, October 28, 2010 3:16:48 AM      Year, date and time\*
Printed: Thursday, August 2, 2007 10:12:00 AM

\* The electronic document was forged to falsely portray as having been "Modified" 4 hours before it was "Created" by Kraft and "Accessed" about 3.2 years after it was last "Modified" and "Printed" by Kraft.

57. The orders from Case No.: CV10-1776 VBF-OP, and Case No.: 2:15-cv-00701-VBF-AS rests on the fraud upon the court described in paragraph 56, and is subject to ongoing litigation.

58. The Inland ESOP made things up, lied and covered up that the Inland ESOP had never hired Kraft and Kraft Americas, L.P. to do anything for them, let alone serve as

25

**COMPLAINT**

their broker in the December 17, 2007 transaction in which it sold 100% of its shares in Inland Concrete Enterprises, Inc.

59. The Inland ESOP's attorneys made things up, lied and covered up that: the Inland ESOP had no broker contract with Kraft and Kraft Americas, L.P.; the six electronic files they received from Kraft as part of discovery in Case No.: CV10-1776 VBF-OP on November 15, 2010 contained no anomalies; and prior to Case No.: 2:15-cv-00701-VBF-AS Kraft had never filed a lawsuit or been a counterclaimant in any lawsuit against the Inland ESOP and Kraft is thus not a vexatious litigant.

60. Thus, no evidence was destroyed; rather a Delaware corporate entity recycled a computer in accordance with guidelines issued by the Delaware Court of Chancery and saved all electronic files. Kraft Americas, L.P., a Delaware corporate entity, pursuant to the guidelines issued by the Delaware Court of Chancery, on November 21, 2002 issued an Electronically Stored Information corporate resolution for preservation of electronically stored information. Pursuant to this policy computer hardware, when no longer functional, were to be recycled in an environmentally responsible manner, and all electronic files were to be stored.  The district court portrayed the recycling of the computer as destroying evidence citing *In Re Napster, Inc. Copyright Litigation* 462 F. Supp. 2d 1060 (N.D. Cal. 2006) and *William T. Thompson Co. v. Gen'l Nutrition Corp.*, 593 F. Supp. 1443, 1456 (C.D. Cal. 1984). However, as all electronic files were stored, Kraft Americas, L.P.'s corporate policy was consistent with the guidance of these two cases, rather than in violation of these two cases as the district court asserted. The

26

**COMPLAINT**

Supreme Court of the United States has furthermore declared that a state cannot punish a party for conduct that may have been lawful where it occurred as it would be unconstitutional. *State Farm v. Campbell* (No. 01-1289). Six electronic files that were saved pursuant to the corporate policy and provided to the Inland ESOP's attorneys as part of discovery on November 15, 2010 in Case No.: CV101776 VBF-OP did not contain anomalies. As to both the recycling of the computer and the saving of the electronic files Kraft was an officer of the Delaware corporate entity that owned the computer and the electronic files and acted in accordance with its corporate resolutions. Kraft was an officer of the General Partner of Kraft Americas, L.P. and acted in accordance with its corporate resolutions. Such conduct is required under Delaware law by an officer of a Delaware corporate entity. And such conduct is acting in a responsible manner.

61. The Inland ESOP's attorneys stated in court filings that Kraft prior to Case No.: 2:15cv-00701-VBF-AS had filed lawsuits or been a counterclaimant against the Inland ESOP. This was false and Kraft was not a vexatious litigant. The Ninth Circuit has established authority related to being a vexatious litigant in *De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990) and neither the second DeLong factor, 912 F.2d at 1147-49, the need to present an adequate record for review, nor the third DeLong factor, 912 F.2d at 1147-49, substantive finding as to the frivolousness or harassing nature of the Kraft's filings and/or litigation conduct, were satisfied.

27

**COMPLAINT**

62. The default judgment from Case No.: CV10-1776 VBF-OP, in addition to being issued by a court that did not have subject matter jurisdiction and for that reason is a nullity, thus rests on schemes to defraud the court through the use of misleading, inaccurate, and incomplete information, the presentation of fraudulent evidence, and the failure to correct the false impressions created. Illicit schemes have been concocted and implemented to subvert the integrity of the court and fraud have been committed by officers of the court, undermining the judicial process, which amounts to fraud upon the court. *See Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128 (9th Cir. 1995)" schemes to defraud the court through the use of misleading, inaccurate, and incomplete information, the presentation of fraudulent evidence, and the failure to correct the false impressions created . . . ." *Id.* at 1132 undermines the judicial process, "which amounts to fraud upon the court." *Id.* (citing *Hazel-Atlas Glass Co. v. Hartford Empire Co.*, 332 U.S. 238, 245– 46, 250 (1944) (deliberately planned scheme to present fraudulent evidence constitutes fraud upon the court). Also *see Abatti v. C.I.R.*, 859 F.2d 115, 118 (9th Cir. 1988) declaring that fraud upon the court involves unconscionable plan or scheme to influence the court improperly. Further *see: Alexander v. Robertson*, 882 F.2d 421, 424 (9th Cir. 1989) "[F]raud upon the court includes both attempts to subvert the integrity of the court and fraud by an officer of the court."; *In re Intermagnetics America, Inc.*, 926 F.2d 912, 916 (9th Cir. 1991) at 916; *Chambers v. Nasco, Inc.* 501 U.S. 32 (1991); *Universal Oil Products Co. v. Root Refining Co.,* 328 U. S. 575, 328 U. S. 580 (1946); *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978); *United States v. Int'l*

28

**COMPLAINT**

*Telephone & Telegraph Corp.*, 349 F.Supp. 22, 29 (D. Conn. 1972); *Root Refin. Co. v. Universal Oil Products*, 169 F.2d 514 (3d Cir. 1948); J. Moore, Federal Practice, P 60.33 at 51011.

63. An officer of the court acting with disregard of his or her obligations is fraud upon the court. *See Workman v. Bell*, 245 F.3d 849, 852 (6th Cir. 2001) (citing *Demjanjuk v. Petrovsky*, 10 F.3d 338 (6th Cir. 1993)), *Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128 (9th Cir. 1995) and *In re Intermagnetics America, Inc.*, 926 F.2d 912, 916 (9th Cir. 1991).

64. Providing false testimony, even if you are not an officer of the court, constitutes fraud upon the court. *See In re Levander*, 180 F.3d 1114, 1118-19 (9th Cir. 1999).

65. The conduct of the Inland ESOP's attorneys constitutes bad faith and fraud upon the court. The Inland ESOP's attorneys' use of misleading and inaccurate representations, the presentation of fraudulent evidence, and the failure to correct the false impressions seek to defraud the court. "A party who presents fraudulent evidence cannot disclaim its effectiveness after the fact." *Hazel-Atlas* at 246-47, 64 S. Ct. at 1001-02.

66. For these reasons, the Inland matter is subject to ongoing litigation.

67. This action contains **a series of additional specific and detailed factual allegations** about the fraudulent, libelous and malicious acts the Defendants have been doing, since at least August 2015 to present, to injure Plaintiff's business and property.

29

## 4. Nature of This Action

68. This is an action for civil relief under 18 U.S.C. §§ 1961 et seq.

69. The Association, its employees, its officers, its directors and its attorneys, in any combination associated in fact, are an "Enterprise," as defined in 18 U.S.C. § 1961(4) (referred to herein as the "Associated-in-Fact Enterprise"). Specifically, the above entities were and are a union or group that is associated in fact, constitute an ongoing organization, and function as a continuing unit. This is due to, for example, their contractual and financial relationship, their common goal of monetizing the fraudulent scheme, and their continuing and substantial interaction and involvement (including through individuals associated with the entities) as alleged herein. These entities were and are associated for a common purpose of engaging in a course of conduct, at least one aspect of which is attempting to extract money from the fraudulent scheme through improper means. These entities have relationships among those associated with the Associated-in-Fact Enterprise, including relationships between and among their respective members, executives, and employees. The association between these entities also has longevity enough to permit these associates to pursue the Associated-in-Fact Enterprise's purpose, including by virtue of their ongoing contractual and financial relationship, alignment of interests, and ongoing interactions.

70. The Association, its employees, its officers, its directors and its attorneys are "persons," as that term is defined in 18 U.S.C. § 1961(3), who, individually and

30

collectively, conduct and direct the affairs of the Associated-in-Fact Enterprise described herein through a continuing pattern of unlawful conduct.

71. The Enterprise engages in, and its activities have an effect on, interstate commerce in connection with *inter alia*, the Enterprise's business of acting for Gainey Ranch, including collecting purported property association related fees/assessments/charges from places in the United States and outside the United States, coercing businesses and individuals to participate in its fraudulent schemes, and suing for alleged infringement of certain issues without an objective basis and for the illegitimate purpose of bolstering the *in terrorem* effect of its fraudulent schemes. The Enterprise uses the instrumentalities of interstate travel, interstate mailings, and interstate wires, and it purchases goods and services from various U.S. states – including in connection with the Defendants' unlawful activities.

72. In violation of 18 U.S.C. § 1962(c), the Defendants and those acting at their direction have conducted, controlled, and participated in the conduct of the Enterprise's affairs through a pattern of unlawful racketeering activity.

73. The pattern of racketeering activity referred to herein consists of a variety of unlawful schemes which were and are specifically intended to and do use unlawful means and influence to enrich the Defendants and others at the expense of Plaintiff and others. These unlawful schemes involved, for instance, conspiracy to commit mail fraud, wire fraud and obstruction of justice in violation of 18 U.S.C. § 1962(d), acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343, respectively, obstruction of justice in

31

**COMPLAINT**

violation of 18 U.S.C. §§ 1512(c) and 1503, and conspiracy to commit money laundering in violation of 18 U.S.C. § 1956 (h).

74. As alleged herein, the Defendants, individually or collectively, conducted the affairs of the Enterprise through a conspiracy to commit mail fraud, wire fraud and obstruction of justice in violation of 18 U.S.C. § 1962(d) in furtherance of their overall scheme to defraud and enhance their wealth through improper means, as described herein.

75. As alleged herein, the Defendants, individually or collectively, and through the conduct of the Enterprise, are engaging in numerous acts of mail fraud and/or have devised an overall scheme or artifice to defraud, and are attempting to commit fraud and carry out such scheme in violation of 18 U.S.C. § 1341, which constitute "predicate acts" under 18 U.S.C. § 1961 in furtherance of their campaign to enhance their wealth through unlawful means, as described herein.

76. As alleged herein, the Defendants, individually or collectively, and through the conduct of the Enterprise, are engaging in numerous acts of wire fraud and/or devised an overall scheme or artifice to defraud, and are attempting to commit fraud and carry out such scheme in violation of 18 U.S.C. § 1343, which constitute "predicate acts" under 18 U.S.C. § 1961 in furtherance of their campaign to enhance their wealth through unlawful means, as described herein.

77. As alleged herein, the Defendants, individually or collectively, conducted the affairs of the Enterprise through in numerous acts of obstruction of justice in violation of

COMPLAINT

18 U.S.C. § 1512(c), which constitute "predicate acts" under 18 U.S.C. § 1961 in furtherance of their overall scheme to defraud and enhance their wealth through improper means, as described herein.

78. As alleged herein, the Defendants, individually or collectively, conducted the affairs of the Enterprise through in numerous acts of obstruction of justice in violation of 18 U.S.C. § 1503, which constitute "predicate acts" under 18 U.S.C. § 1961 in furtherance of their overall scheme to defraud and enhance their wealth through improper means, as described herein.

79. As alleged herein, the Defendants, individually or collectively, conducted the affairs of the Enterprise through a conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h), which constitute "predicate acts" under 18 U.S.C. § 1961 (§ 1956(a)(2)(A) defines money laundering and § 1956(c)(7)(A) defines specified unlawful activity as any act or activity constituting an offense listed in section § 1961(1)) in furtherance of their overall scheme to defraud and enhance their wealth through improper means, as described herein.

80. These predicate acts are related because they had common purposes and goals (such as the unlawful enrichment of the Defendants in violation of any contractual commitments and promises), common methods of commission (for example, the fraudulent use of the mails or wires, and/or misconduct through obstruction of justice using false representations and documents), and common participants (Defendants, and those acting at their direction).

33

81. Each of the foregoing acts of racketeering by the Defendants are related, continuous, ongoing, and part of a pattern of conduct as described herein and continuing since at least August 2015. Accordingly, the Defendants, individually or collectively, have engaged and are engaging in a continuing and related pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5). The Defendants' unlawful acts constitute a "pattern of racketeering activity," as that term is defined in 18 U.S.C. § 1961(5).

82. As a direct and proximate result of the participation in and conduct of the affairs of the Enterprise alleged herein by the Defendants through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), Plaintiff has been directly and proximately injured in his business and property, and is entitled to all remedies available under the law. The injury to Plaintiff fairly can be traced to the challenged actions of the Defendants and has not resulted from the independent action of some third party not before the Court. The injury to Plaintiff can be proven and relieved by the Court.

## 5. 18 U.S.C. § 1964 (A) Gives the United States District Court for The District of Arizona Jurisdiction to Prevent and Restrain Violations of 18 U.S.C. 1962

83. 18 U.S.C. § 1964(a) gives the district courts of the United States jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest,

34

direct or indirect, in any enterprise; imposing reasonable restrictions on the future

activities or investments of any person, including, but not limited to, prohibiting any

person from engaging in the same type of endeavor as the enterprise engaged in, the

activities of which affect interstate or foreign commerce; or ordering dissolution or

reorganization of any enterprise, making due provision for the rights of innocent persons.

### 6.  18 U.S.C. § 1964 (C) Authorizes RICO's Private Right of Action

84. RICO's private right of action is contained in 18 U.S.C. § 1964(c), which

provides in relevant part that "[a]ny person injured in his business or property by reason

of a violation of section 1962 of this chapter may sue therefor in any appropriate United

States district court and shall recover threefold the damages he sustains and the cost of

the suit, including a reasonable attorney's fee."

85. The United States Supreme Court clarified the question of civil RICO standing

in *Sedima S.P.R.L. v. Imrex Co.* 473 U.S. 479, 105 S.Ct. 3275.

> The Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U. S. C. §§
> 1961-1968, which is directed at "racketeering activity" -- defined in § 1961(1) to
> encompass, *inter alia*, acts "indictable" under specific federal criminal provisions,
> including mail and wire fraud -- provides in § 1964(c) for a private civil action to
> recover treble damages by any person injured in his business or property "by
> reason of a violation of section 1962." Section 1962(c) prohibits conducting or
> participating in the conduct of an enterprise "through a pattern of racketeering
> activity." Petitioner corporation, which had entered into a joint business venture
> with respondent company and which believed that it was being cheated by alleged
> overbilling, filed suit in Federal District Court, asserting, *inter alia*, RICO claims
> against respondent company and two of its officers (also respondents) under §
> 1964(c) for alleged violations of § 1962(c), based on predicate acts of mail and
> wire fraud. The court dismissed the RICO counts for failure to state a claim. The

35

**COMPLAINT**

Court of Appeals affirmed, holding that under § 1964(c) a RICO plaintiff must allege a "racketeering injury" -- an injury "caused by an activity which RICO was designed to deter," not just an injury occurring as a result of the predicate acts themselves -- and that the complaint was also defective for not alleging that respondents had been convicted of the predicate acts of mail and wire fraud, or of a RICO violation.

Held:

1. There is no requirement that a private action under § 1964(c) can proceed only against a defendant who has already been convicted of a predicate act or of a RICO violation. A prior conviction requirement is not supported by RICO's history, its language, or considerations of policy. To the contrary, every indication is that no such requirement exists. Accordingly, the fact that respondents have not been convicted under RICO or the federal mail and wire fraud statutes does not bar petitioner's action. Pp. 488-493. 2. Nor is there any requirement that in order to maintain a private action under § 1964(c) the plaintiff must establish a "racketeering injury," not merely an injury resulting from the predicate acts themselves. A reading of the statute belies any "racketeering injury" requirement. If the defendant engages in a pattern of racketeering activity in a manner forbidden by § 1962, and the racketeering activities injure the plaintiff in his business or property, the plaintiff has a claim under § 1964(c). There is no room in the statutory language for an additional, amorphous "racketeering injury" requirement. Where the plaintiff alleges each element of a violation of § 1962, the compensable injury necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern, for the essence of the violation is the commission of those acts in connection with the conduct of an enterprise. Pp. 493-500.

The United States Supreme Court also stated:

Congress provided criminal penalties of imprisonment, fines, and forfeiture for violation of these provisions. § 1963. In addition, it set out a far-reaching civil enforcement scheme, § 1964, including the following provision for private suits:

"Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." § 1964(c).

The Supreme Court concluded:

36

**COMPLAINT**

In sum, we can find no support in the statute's history, its language, or considerations of policy for a requirement that a private treble-damages action under § 1964(c) can proceed only against a defendant who has already been criminally convicted. To the contrary, every indication is that no such requirement exists. Accordingly, the fact that Imrex and the individual defendants have not been convicted under RICO or the federal mail and wire fraud statutes does not bar Sedima's action.

Underlying the Court of Appeals' holding was its distress at the "extraordinary, if not outrageous," uses to which civil RICO has been put. 741 F.2d, at 487. Instead of being used against mobsters and organized criminals, it has become a tool for everyday fraud cases brought against "respected and legitimate 'enterprises.'" Ibid. Yet Congress wanted to reach both "legitimate" and "illegitimate" enterprises. *United States v. Turkette, supra*. The former enjoy neither an inherent incapacity for criminal activity nor immunity from its consequences. The fact that § 1964(c) is used against respected businesses allegedly engaged in a pattern of specifically identified criminal conduct is hardly a sufficient reason for assuming that the provision is being misconstrued. Nor does it reveal the "ambiguity" discovered by the court below.

"[T]he fact that RICO has been applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth." *Haroco, Inc. v. American National Bank & Trust Co. of Chicago*, supra, at 398. It is true that private civil actions under the statute are being brought almost solely against such defendants, rather than against the archetypal, intimidating mobster.FN16 Yet this defect-if defect it is-is **3287 inherent in the statute as written, and its correction must lie with Congress. It is not for the judiciary to eliminate the private action in situations *500 where Congress has provided it simply because plaintiffs are not taking advantage of it in its more difficult applications.

We nonetheless recognize that, in its private civil version, RICO is evolving into something quite different from the original conception of its enactors. See generally ABA Report, at 55-69. Though sharing the doubts of the Court of Appeals about this increasing divergence, we cannot agree with either its diagnosis or its remedy. The "extraordinary" uses to which civil RICO has been put appear to be primarily the result of the breadth of the predicate offenses, in particular the inclusion of wire, mail, and securities fraud, and the failure of Congress and the courts to develop a meaningful concept of "pattern." We do not believe that the amorphous standing requirement imposed by the Second Circuit effectively responds to these problems, or that it is a form of statutory amendment appropriately undertaken by the courts.

**COMPLAINT**

86. Thus the plain text of Section 1964(c) creates a private civil right of action in favor of anyone who has been "injured in his business or property by reason of a violation of section 1962.

87. Plaintiff has cited in this Complaint that he has been injured "by reason of a violation of section 1962" and thus has standing to sue under civil RICO.

88. The United States Supreme Court in *Bridge et al. v. Phoenix Bond & Indemnity Co. et al.* 553 U.S. 639, 128 S. Ct. 2131 unanimously again affirmed that the plain text of the RICO statute must be respected by the judiciary, including RICO's private right of action and  the use of the mail in the scheme to defraud. The Supreme Court stated:

*647 II We begin by setting forth the applicable statutory provisions. RICO's private right of action is contained in 18 U.S.C. § 1964(c), which provides in relevant part that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." Section 1962 contains RICO's criminal prohibitions. Pertinent here is § 1962(c), which makes it "unlawful for any person employed by or associated with" an enterprise** 2138 engaged in or affecting interstate or foreign commerce "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." The term "racketeering activity" is defined to include a host of so-called predicate acts, including "any act which is indictable under ... section 1341 (relating to mail fraud)." § 1961(1)(B).

The upshot is that RICO provides a private right of action for treble damages to any person injured in his business or property by reason of the conduct of a qualifying enterprise's affairs through a pattern of acts indictable as mail fraud. Mail fraud, in turn, occurs whenever a person, "having devised or intending to devise any scheme or artifice to defraud," uses the mail "for the purpose of executing such scheme or artifice or attempting so to do." § 1341. The gravamen of the offense is the scheme to defraud, and any "mailing that is incident to an essential part of the scheme satisfies the mailing element," *Schmuck v. United*

38

**COMPLAINT**

*States*, 489 U.S. 705, 712, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989) (citation and internal quotation marks omitted), even if the mailing itself "contain[s] no false information," id., at 715, 109 S.Ct. 1443.

Once the relationship among these statutory provisions is understood, respondents' theory of the case is straightforward. They allege that petitioners devised a scheme to defraud*648 when they agreed to submit false attestations of …..

Whatever the merits of petitioners' arguments as a policy matter, we are not at liberty to rewrite RICO to reflect their-or our-views of good policy. We have repeatedly refused to adopt narrowing constructions of RICO in order to make it conform to a preconceived notion of what Congress intended to proscribe. *See, e.g., National Organization for Women, Inc. v. Scheidler*, 510 U.S. 249, 252, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994) (rejecting the argument that "RICO requires proof that either the racketeering enterprise or the predicate acts of racketeering were motivated by an economic purpose"); *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 244, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) (rejecting "the argument for reading an organized crime limitation into RICO's pattern concept"); *Sedima, S.P.R.L.v. Imrex Co.*, 473 U.S. 479, 481, 105 S. Ct. 3275, 87 L.Ed.2d 346 (1985) (rejecting the view that RICO provides a private right of action "only against defendants who had been convicted on criminal charges, and only where there had occurred a 'racketeering injury' ").

We see no reason to change course here. RICO's text provides no basis for imposing a first-party reliance requirement. If the absence of such a requirement leads to the undue proliferation of RICO suits, the "correction must lie with Congress." Id., at 499, 105 S.Ct. 3275. "It is not for the judiciary to eliminate the private action in situations where Congress has provided it." Id., at 499-500, 105 S.Ct. 3275.

89. The Ninth Circuit discussed these issues in *Odom v. Microsoft Corp* 486 F.3d 541:

III. Discussion A. RICO The Racketeer Influenced and Corrupt Organizations ("RICO") Act, passed in 1970 as Title IX of the Organized Crime Control Act, provides for both criminal and civil liability. Pub.L. No. 91452, § 901, 84 Stat. 922 (1970) (codified at 18 U.S.C. §§ 1961-1968). Civil RICO provides for treble damages. 18 U.S.C. § 1964(c). There has been some judicial resistance to RICO,

39

manifested in narrow readings of its provisions by lower federal courts. In four notable cases, the Supreme Court has corrected these narrow readings.

The first case was *546 *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), which we discuss in detail later in this opinion. The First Circuit had read RICO to prohibit only the infiltration of legitimate businesses by organized crime. *United States v. Turkette*, 632 F.2d 896, 899 (1st Cir.1980). In its view, RICO did not prohibit criminal acts by purely criminal enterprises. Id. The Supreme Court held that the court of appeals had "clearly departed from and limited the statutory language." *Turkette*, 452 U.S. at 581, 101 S.Ct. 2524.

The Court explained:  As a measure to deal with the infiltration of legitimate businesses by organized crime, RICO was both preventive and remedial.... If Congress had intended the more circumscribed approach espoused by the Court of Appeals, there would have been some positive sign that the law was not to reach organized criminal activities that give rise to the concerns about infiltration. The language of the statute, however-the most reliable evidence of its intent-reveals that Congress opted for a far broader definition of the word "enterprise," and we are unconvinced by anything in the legislative history that this definition should be given less than its full effect. Id. at 593, 101 S.Ct. 2524.

The second case was *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 481, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), in which the Second Circuit had read civil RICO to impose liability only against defendants who had been criminally convicted, and only for what the court termed "racketeering injury." The Supreme Court disagreed with both propositions. It noted that the court of appeals had narrowly construed RICO in order to avoid what that court viewed as "intolerable practical consequences." Id. at 490, 105 S.Ct. 3275. But the Court insisted that a "less restrictive reading" was required by the text of the statute. It wrote: RICO is to be read broadly. This is the lesson not only of Congress' self-consciously expansive language and overall approach, but also of its express admonition that RICO is to "be liberally construed to effectuate its remedial purposes." .... Underlying the Court of Appeals' holding was its distress at the "extraordinary, if not outrageous," uses to which civil RICO has been put. Instead of being used against mobsters and organized criminals, it has become a tool for everyday fraud cases brought against "respected and legitimate 'enterprises.'"

" Yet Congress wanted to reach both "legitimate" and "illegitimate" enterprises. The former enjoy neither an inherent incapacity for criminal activity nor immunity from its consequences.... It is true that private civil actions under the statute are being brought almost solely against such defendants, rather than against the

archetypal, intimidating mobster. Yet this defect-if defect it isis inherent in the statute as written, and its correction must lie with Congress. Id. at 497-98, 499, 105 S.Ct. 3275 (citations omitted).

The third case was *National Organization for Women v. Scheidler*, 510 U.S. 249, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994), in which the Seventh Circuit had read civil RICO to provide liability only when acts of a RICO enterprise had an economic motive. The Supreme Court refused to read such a limitation into the statute. It wrote, In *United States v. Turkette*, we faced the analogous question whether "enterprise" as used in § 1961(4) should be confined to "legitimate" enterprises.

*547 Looking to the statutory language, we found that "[t]here is no restriction upon the associations embraced by the definition: an enterprise includes any union or group of individuals associated in fact." ... The parallel to the present case is apparent. Congress has not, either in the definitional section or in the operative language, required that an "enterprise" in § 1962(c) have an economic motive. Id. at 260-61, 114 S.Ct. 798 (citations omitted).

The fourth case was *Cedric Kushner Promotions v. King*, 533 U.S. 158, 121 S.Ct. 2087, 150 L.Ed.2d 198 (2001), a civil RICO case in which the Second Circuit had held that the president and sole shareholder of a corporation could not be a "person" who "conduct[s] or participate[s] ... in the conduct of [the corporate] enterprise's affairs." Id. at 160, 121 S.Ct. 2087 (quoting 18 U.S.C. § 1962(c)) (ellipsis in original; brackets added). In the view of the court of appeals, the president and sole shareholder was therefore not a "person" made liable under RICO. Id. at 161, 121 S.Ct. 2087. The Supreme Court disagreed with this narrow construction. Characterizing the question as whether the president and sole shareholder (the "person") was legally distinct from the corporation (the "enterprise"), the Court wrote, "The corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status. And we can find nothing in the statute that requires more 'separateness' than that." Id. at 163, 121 S.Ct. 2087. We take from these cases the general instruction that we should not read the statutory terms of RICO narrowly. Rather, as the Court wrote in *Sedima*, "RICO is to be read broadly." 473 U.S. at 497, 105 S.Ct. 3275. As Congress admonished and as the Court repeated in *Sedima*, RICO should "be liberally construed to effectuate its remedial purposes." Id. at 498, 105 S.Ct. 3275; RICO § 904(a).

**COMPLAINT**

90. Pursuant to the plaint text of RICO Plaintiff has the private right of action and can ask the Court to apply law to the fact that the Defendants committed acts defined in § 1961(1)(B).

91. Herein, Plaintiff claims Defendants conspired to commit mail fraud, wire fraud and obstruction of justice in violation of the RICO conspiracy statute. The Supreme Court of the United States in *Salinas v. United States* 522 U.S. 22 stated:

The RICO conspiracy statute, simple in formulation, provides:

"It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d).

There is no requirement of some overt act or specific act in the statute before us, unlike the general conspiracy provision applicable to federal crimes, which requires that at least one of the conspirators have committed an "act to effect the object of the conspiracy." § 371. The RICO conspiracy provision, then, is even more comprehensive than the general conspiracy offense in § 371.

In interpreting the provisions of § 1962(d), we adhere to a general rule: When Congress uses well-settled terminology of criminal law, its words are presumed to have their ordinary meaning and definition. **477 See *Morissette v. United States*, 342 U.S. 246, 263, 72 S.Ct. 240, 249-250, 96 L.Ed. 288 (1952). The relevant statutory phrase in § 1962(d) is "to conspire." We presume Congress intended to use the term in its conventional sense, and certain well-established principles follow.

A conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense. See *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 253-254, 60 S.Ct. 811, 858-859, 84 L.Ed. 1129 (1940). The partners in the criminal plan must agree to pursue the same criminal objective and may divide up the work, yet each is responsible for the acts of each other. See *Pinkerton v. United States*, 328 U.S. 640, 646, 66 S.Ct. 1180, 1183-1184, 90 L.Ed. 1489 (1946) ("And so long as the partnership in crime continues, the partners act for each other in carrying it forward"). If conspirators have a plan which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators. As Justice Holmes

42

**COMPLAINT**

observed: "[P]lainly a person may conspire for the commission of a crime by a third person." *United States v. Holte*, 236 U.S. 140, 144, 35 S.Ct. 271, 272, 59 L.Ed. 504 (1915). A person, moreover, may be liable for conspiracy even though he was incapable of committing the substantive offense. *United States v. Rabinowich*,238 U.S. 78, 86, 35 S.Ct. 682, 684, 59 L.Ed. 1211 (1915).

92. Herein. Plaintiff claims that Defendants committed mail fraud. Title 18, United States Code, Section 1341 relating to mail fraud is defined as a predicate act in § 1961(1)(B). The term "racketeering activity" includes "any act which is indictable under ... section 1341 (relating to mail fraud)." RICO provides a private right of action for treble damages to any person injured in his business or property by reason of the conduct of a qualifying enterprise's affairs through a pattern of acts indictable as mail fraud.

93. Mail fraud, in turn, occurs whenever a person, "having devised or intending to devise any scheme or artifice to defraud," uses the mail "for the purpose of executing such scheme or artifice or attempting so to do." § 1341. The gravamen of the offense is the scheme to defraud, and any "mailing that is incident to an essential part of the scheme satisfies the mailing element," *Schmuck v. United States*, 489 U.S. 705, 712, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989) (citation and internal quotation marks omitted), even if the mailing itself "contain[s] no false information," id., at 715, 109 S.Ct. 1443. *Bridge et al. v. Phoenix Bond & Indemnity Co. et al.* 553 U.S. 639, 128 S.Ct. 2131.

94. Herein, Plaintiff claims that Defendants committed wire fraud. Title 18, United States Code, Section 1343 relating to wire fraud is defined as a predicate act in § 1961(1)(B). The term "racketeering activity" includes "any act which is indictable under

**COMPLAINT**

... section 1343 (relating to wire fraud)." RICO provides a private right of action for treble damages to any person injured in his business or property by reason of the conduct of a qualifying enterprise's affairs through a pattern of acts indictable as wire fraud.

95. Wire fraud, in turn, occurs whenever a person, "having devised or intending to devise any scheme or artifice to defraud," uses the wire "for the purpose of executing such scheme or artifice." § 1343.

96. The core of the offense is the scheme to defraud. The fraudulent statements themselves need not be transmitted by wire; it is only required that the scheme to defraud be advanced, concealed or furthered by the use of the U.S. wires.  § 1343 and *Sedima S.P.R.L. v. Imrex Co*. 473 U.S. 479, 105 S.Ct.3275.

97. The Ninth *Circuit in Odom v. Microsoft Corp* 486 F.3d 541:

"[A] wire fraud violation consists of (1) the formation of a scheme or artifice to defraud; (2) use of the United States wires or causing a use of the United States wires in furtherance of the scheme; and (3) specific intent to deceive or defraud." Schreiber, 806 F.2d at 1400 (citation omitted); see also *United States v. McNeil*, 320 F.3d 1034, 1040 (9th Cir.2003). To the degree that the first requirement-the formation of a scheme or artifice to defraud-requires a showing of the defendants' state of mind, general rather than particularized allegations are sufficient. Similarly, the third requirement-specific intent to deceive or defraud- requires only a showing of the defendants' state of mind, for which general allegations are sufficient. The only aspects of wire fraud that require particularized allegations are the factual circumstances of the fraud itself.

98. Herein, Plaintiff claims that Defendants committed obstruction of justice. Title 18, United States Code, Section 1512(c) relating to obstruction of justice is defined as a predicate act in § 1961(1)(B). The term "racketeering activity" includes "any act which is

**COMPLAINT**

indictable under ... section 1512 (relating to obstruction of justice)." RICO provides a

private right of action for treble damages to any person injured in his business or property

by reason of the conduct of a qualifying enterprise's affairs through a pattern of acts

indictable as obstruction of justice.

99. Obstruction of justice pursuant to § 1512(c) is obstruction by destruction of

evidence and is the creation of the Sarbanes-Oxley Act (P.L. 107-204, 116 Stat, 807

(2000)), and proscribes obstruction of federal administrative, judicial, or congressional

proceedings by destruction of evidence.18 U.S.C. 1512(c); 1515(a)(1).

100. More specifically, subsection 1512(c) provides that: I. Whoever II. Corruptly

III. A.1.alters,2. destroys,3. mutilates, or 4. Conceals B. 1. a record, 2. document, or 3.

other object, or C. attempts to do so, D. with the intent to impair the object's 1. integrity,

or 2. availability for use E. in an official proceeding, or IV. Otherwise A. 1. obstructs, 2.

influences, or 3. Impedes B. an official proceeding, or C. attempts to do so shall be fined

under this title or imprisoned not more than 20 years, or both. 18 U.S.C. 1512(c); e.g.,

*United States v. Freeman*, 741 F.3d 426, 437-38 (4th Cir. 2014).

101. Section 1512(c) covers only obstructions committed or attempted with

"corrupt" intent. Here, the courts have said that "corruptly" means "acting with an

improper purpose and to engage in conduct knowingly and dishonestly with the specific

intent to subvert, impede, or obstruct the proceeding;" (*United States v. Gordon*, 710 F.3d

1124, 1151 (10th Cir. 2013)) that it means "acting with consciousness of wrongdoing."

*United States v. Mann*, 701 F.3d 274, 305-306 (8th Cir. 2012). It does not mean that the

45

**COMPLAINT**

obstruction must be done with wicked or evil intent. *United States v. Watters*, 717 F.3d 733, 734-36 (9th Cir. 2013) (finding it unnecessary to decide what "corruptly" means but suggesting that "consciousness of wrongdoing"—the Arthur Anderson interpretation of "knowingly corruptly"—places too heavy a burden on the government). *See also United States v. Burge*, 711 F.3d 803, 808-10 (7th Cir. 2013)(rejecting the argument that taking a deposition in conjunction with federal civil litigation rested beyond the reach of §1512(c))) a fact that may flow from their ambivalence over whether the evidence the defendant sought to deny need be material. Some have declared that there must be a nexus between the defendant's destructive conduct and the proceedings he sought to obstruct: "the defendant's conduct must 'have a relationship in time, causation, or logic with the [official] ...proceedings'; in other words, 'the endeavor must have the natural and probable effect of interfering with the due administration of justice.'" *United States v. Carson*, 560 F.3d 566, 584 (6th Cir. 2009); *United States v. Simpson*, 741 F.3d 539, 552 (5th Cir. 2014)(internal citations omitted)(""Though a proceeding need not be actually pending at the time of the obstructive act, an obstruction of justice conviction requires some nexus between the obstructive act and some official government proceeding. A proceeding must at least be foreseen, such that the defendant has in contemplation some particular official proceeding in which the destroyed evidence might be material"); *United States v. Desposito*, 704 F.3d 221, 230-31 (2d Cir. 2013); *United States v. Ahrensfield*, 698 F.3d 1310, 1324 (10th Cir. 2012); *see also United States v. Townsend*, 630 F.3d 1003, 1015 n. 8 (11th Cir. 2011)(observing without comment that

46

the trial court's instruction to the jury that, "the defendant can be found guilty of that offense only if all the following facts are proved beyond a reasonable doubt ... Four that the natural and probable effect of the defendant's conduct would be the interference with the due administration of justice"). Others have said that there is no materiality requirement (i.e., that the obstruction is not confined to evidence that has the natural tendency to influence the proceeding). *United States v. Burge*, 711 F.3d 803, 812 n.4 (7th Cir. 2013). As is generally true of attempts to commit a federal offense, attempt to violate subsection 1512(c) requires an intent to violate the subsection and a substantial step toward the accomplishment of that goal. *United States v. Lucas*, 499 F.3d 769, 781 (8th Cir. 2007); *United States v. Gordon*, 710 F.3d 1124, 1150 (10th Cir. 2013)("Thus, [for attempt] the government was required to prove beyond a reasonable doubt (1) that Mr. Gordon intended to 'corruptly' obstruct an official proceeding ... and (2) that he committed a substantial step toward the commission of the intended obstruction"). Like subsection 1512(a) and 1512(b) offenses, subsection 1512(c) offenses are RICO and money laundering predicate offenses (18 U.S.C. 1961, 1956(c)(7)(A)) and may provide the foundation for criminal liability as a principal, accessory after the fact, conspirator, or one guilty of misprision.18 U.S.C. 2, 3, 371, 1512(k), 4; *see e.g.*, *United States v. Mann*, 685 F.3d 714, 722 (8th Cir. 2012)(conspiracy and aiding and abetting). If the federal judicial, administrative or congressional proceedings are obstructed, prosecution may be had in the United States even if the destruction occurs overseas (18 U.S.C. 1512(h)), the proceedings are yet pending (18 U.S.C. 1512(f); *United States v. Ahrensfield*, 698 F.3d

47

1310, 1324 (10th Cir. 2012)), or the offender is unaware of their federal character. 18

U.S.C. 1512(g); *United States v. Ahrensfield*, 698 F.3d at 1324.

102. Herein, Plaintiff claims that Defendants committed obstruction of justice.

Title 18, United States Code, Section 1503 relating to obstruction of justice is defined as

a predicate act in § 1961(1)(B). The term "racketeering activity" includes "any act which

is indictable under ... section 1503 (relating to obstruction of justice)." RICO provides a

private right of action for treble damages to any person injured in his business or property

by reason of the conduct of a qualifying enterprise's affairs through a pattern of acts

indictable as obstruction of justice.

103. Obstruction of justice pursuant to § 1503 apply to pending federal court

proceedings. *United States v. Aguilar*, 515 U.S. 593, 599 (1995), citing *Pettibone v.*

*United States*, 148 U.S. 197, 207 (1893).

104.  It condemns obstructing pending judicial proceedings by means of any of

four methods. Three explicitly address interfering with federal jurors or court officials;

the fourth, the so-called omnibus provision, speaks to interfering with the "due

administration of justice." The omnibus provision states: I. Whoever II. A. corruptly or B.

by threats or force, or C. by any threatening letter or communication, III. A. influences,

B. obstructs, or C. impedes, or D. endeavors to 1. influence, 2. obstruct, or 3. impede, IV.

the due administration of justice shall be punished as provided in subsection (b). 18

U.S.C. 1503(a).

COMPLAINT

105. The courts often observe that to convict under this omnibus or "catchall" provision one must prove: "(1) that there was a pending judicial proceeding, (2) that the defendant knew this proceeding was pending, and (3) that the defendant then corruptly endeavored to influence, obstruct, or impede the due administration of justice." *United States v. Monus*, 128 F.3d 376, 387 (6th Cir. 1997); *see also United States v. Erickson*, 561 F.3d 1150, 1159 (10th Cir. 2009); *United States v. Macari*, 545 F.3d 517, 522-23 (7th Cir. 2008); *United States v. Richardson*, 676 F.3d 491, 502 (5th Cir. 2012); *United States v. Brenson*, 104 F.3d 1267, 1275 (11th Cir. 1997). Some also assert that the obstruction must also be material to the matters before the judicial proceeding. *United States v. Sussman*, 709 F.3d 155, 168 (3d Cir. 2013)("Under 18 U.S.C. §1503(a), the elements of a prima facie case of obstruction of justice are: (1) the existence of a judicial proceeding; (2) knowledge or notice of the pending proceeding; (3) acting corruptly with the intent of influencing, obstructing, or impeding the proceeding in the due administration of justice: and (4) the action had the natural and probable effect of interfering with the due administration of justice"); *United States v. Thomas*, 612 F.3d 1107, 1128-129 (9th Cir. 2010). As to the first two elements, the Supreme Court has maintained for over a century that "a person is not sufficiently charged with obstructing or impeding the due administration of justice in a court unless it appears that he knew or had notice that justice was being administered in such court." *United States v. Aguilar*, 515 U.S. 593, 599 (1995), quoting *Pettibone v. United States*, 148 U.S. 197, 206 (1893). There is no requirement that the defendant's endeavors succeed (*United States v. Aguilar*,

49

515 U.S. at 599, 600; *United States v. Richardson*, 676 F.3d 491, 503 (5th Cir. 2012);

*United States v. Blair*, 661 F.3d 755, 766 (4th Cir. 2011); *United States v. Macari*, 453

F.3d 926, 939 (7th Cir. 2006); *United States v. Quattrone*, 441 F.3d 153, 170 (2d Cir.

2006); *United States v. McBride*, 362 F.3d 360, 372 (6th Cir. 2004); *United States v.

Muhammad*, 125 F.3d 608, 620 (8th Cir. 1997)) or even that they were capable of

succeeding (as long as the accused was unaware of the futility of his efforts to obstruct).

*United States v. Tackett*, 113 F.3d 603, 611 (6th Cir. 1997) ("Although the omnibus

clause of §1503 requires that a defendant's actions were intended to obstruct an actual

judicial proceeding, the government need not prove that the actions had their intended

effect. Furthermore, an endeavor to obstruct justice violates the law even if, unbeknownst

to the defendant, the plan is doomed to failure from the start"), citing *United States v.

Osborn*, 385 U.S. 323, 333 (1966). In order to "corruptly endeavor" to obstruct the due

administration of justice, "[t]he action taken by the accused must be with an intent to

influence judicial or grand jury proceedings.... Some courts have phrased this showing as

a nexus requirement—that the act must have a relationship in time, causation, or logic

with the judicial proceedings. In other words, the endeavor must have the natural and

probable effect of interfering with the due administration of justice." *United States v.

Aguilar*, 515 U.S. 593, 599 (1995), citing *United States v. Wood*, 6 F.3d 692, 696 (10th

Cir. 1993), and *United States v. Walasek*, 527 F.2d 676, 679 (3d Cir. 1975); *see also

United States v. Bonds*, 730 F.3d 890, 897 (9th Cir. 2013); *United States v. Ashqar*, 582

F.3d 819, 823 (7th Cir. 2009); *United States v. Johnson*, 485 F.3d 1264, 1270 (11th Cir.

**COMPLAINT**

2007); *United States v. Quattrone*, 441 F.3d 153, 170-71 (2d Cir. 2006); *United States v. Joiner*, 418 F.3d 863, 868 (8th Cir. 2005). The Supreme Court's observations, notwithstanding, the courts are somewhat divided over whether the obstructed judicial proceedings must actually be pending. *United States v. Quattrone*, 441 F.3d 153, 170 (2d Cir. 2006)(emphasis added)("In order to convict for obstruction of justice under the omnibus clause of Section 1503, the government must establish (1) that there is a pending judicial or grand jury proceeding constituting the administration of justice ... "); accord *United States v. Erickson*, 561 F.3d 1150, 1159 (10th Cir. 2009); *United States v. Weber*, 320 F.3d 1047, 1050 (9th Cir. 2003); *United States v. Fassnacht*, 332 F.3d 440, 447 (7th Cir. 2003); *United States v. Steele*, 241 F.3d 302, 304-5 (3d Cir. 2001); *United States v. Sharpe*, 193 F.3d 852, 864 (5th Cir. 1999); *United States v. Layne*, 192 F.3d 556, 572 (6th Cir. 1999); *United States v. Frankhauser*, 80 F.3d 641, 650-51 (1st Cir. 1966); *United States v. Littleton*, 76 F.3d 614, 618-19 (4th Cir. 1996); contra *United States v. Novak*, 217 F.3d 566, 571-72 (8th Cir. 2000); *see also United States v. Vaghela*, 169 F.3d 729, 732-34 (11th Cir. 1999)(pendency not necessarily required in cases of conspiracy to violate Section 1503); *United States v. Bruno*, 383 F.3d 65, 87 (2d Cir. 004)(proceedings need not be pending but there must be evidence from which to infer that they were anticipated in the case of a conspiracy to violate Section 1503). The specific kinds of misconduct which will provide the basis for a prosecution under the omnibus clause of §1503 vary considerably. *United States v. Richardson*, 676 F.3d 491, 502 (5th Cir. 2012) (internal citations omitted) (The omnibus clause was "drafted with an eye to the variety

**COMPLAINT**

of corrupt methods by which the proper administration of justice may be impeded or thwarted, a variety limited only by the imagination of the criminally inclined"); *see e.g.*, *United States v. Bonds*, 730 F.3d 890, 894-95 (9th Cir. 2013)(evasive and misleading testimony before the grand jury); *United States v. Sussman*,709 F.3d 155, 168 (3d Cir. 2013)(violation of court order freezing assets); *United States v. Macari*, 453 F.3d 926, 936 (7th Cir. 2006)(directing a witness to lie before the grand jury); *United States v. Quattrone*, 441 F.3d 153, 169-73 (2d Cir. 2006)(destruction of documents sought under a grand jury subpoena); *United States v. Joiner*, 418 F.3d 863, 865-66 (8th Cir. 2005) (retaliatory economic harassment of federal judge and prosecutors responsible for the defendant's earlier conviction); *United States v. Weber*, 320 F.3d 1047, 1051 (9th Cir. 2003) (threatening to kill the judge presiding over the defendant's supervised release revocation hearing); *United States v. Novak*, 217 F.3d 566, 569-72 (8th Cir. 2000)(submission of false financial reports in violation of court order governing supervised release); *United States v. Fleming*, 215 F.3d 930, 933-34 (9th Cir. 2000)(filing false liens against the property of a federal judge in an effort to influence the judge's handling of a civil action); *United States v. Layne*, 192 F.3d 556, 572 (6th Cir. 1999)(attempt to influence the testimony of a criminal trial witness); *United States v. Muhammad*, 120 F.3d 688 (7th Cir. 1997)(civil trial juror's solicitation of a bribe); *United States v. Atkin*, 107 F.3d 1213 (6th Cir. 1997) (promising to bribe a trial judge).

106. Herein, Plaintiff claims Defendants conspired to commit money laundering. Title 18, United States Code, Section 1956(h) relating to money laundering is defined as

52

**COMPLAINT**

a predicate act in § 1961(1)(B). The term "racketeering activity" includes "any act which is indictable under ... section 1956 (relating to money laundering)." RICO provides a private right of action for treble damages to any person injured in his business or property by reason of the conduct of a qualifying enterprise's affairs through a pattern of acts indictable as money laundering.

107. Money laundering, in turn, occurs whenever a person, "transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States—(A) with the intent to promote the carrying on of specified unlawful activity" § 1956(a)(2)(A). The term "specified unlawful activity means "any act or activity constituting an offense listed in section 1961(1) of this title except an act which is indictable under subchapter II of chapter 53 of title 31" § 1956(c)(7)(A). And "Any person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy." 18 U.S.C. § 1956(h).

COMPLAINT

### 7. The Association, Its Employees, Its Officers, Its Directors and Its Attorneys Are An "Enterprise". 18 U.S.C. § 1961(4). *United States v. Turkette*. Engaged in or Affecting Interstate Commerce. *United States v. Elliott*. And Concealed Its Acts. *Rotella v. Wood*

108. "Enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity. 18 U.S.C. § 1961(4)

109. The Association, its employees, its officers, its directors and its attorneys are an "enterprise". *See* 18 U.S.C. § 1961(4).

110. The Supreme Court of the United States has also approved of both legitimate and illegitimate enterprises, even though the statute does not encompass both explicitly. *See United States v. Turkette*, 452 U.S. 576, 580-87 (1981).

111. This action is based upon violations of federal criminal statutes (see 18 U.S.C. § 1961(1)(B)). The nexus with interstate commerce is thus necessarily established by the commission of the underlying federal crime. *See United States v. Urban*, 404 F.3d 754, 767 (3d Cir. 2005) (stating that the government / plaintiff "need only prove that Hobbs Act extortion *potentially* affected interstate commerce"). Moreover, because the U.S. Constitution confers the postal powers upon the federal government, acts of mail fraud, even intrastate use of the mails, have an inherent nexus with interstate commerce. *United States v. Elliott*, 89 F.3d 1360 (8th Cir. 1996).  Defendants' Enterprise engages in, and its activities have an effect on, interstate commerce in connection with *inter alia*, the Enterprise's business of acting for Gainey Ranch, including collecting purported property

54

association related fees/assessments/charges from places in the United States and outside the United States, coercing businesses and individuals to participate in its fraudulent schemes, and suing for alleged infringement of certain issues without an objective basis and for the illegitimate purpose of bolstering the *in terrorem* effect of its fraudulent schemes. The Enterprise uses the instrumentalities of interstate travel, interstate mailings, and interstate wires, and it purchases goods and services from various U.S. states – including in connection with the Defendants' unlawful activities. In *United States v. Beasley*, 72 F.3d 1518 (11th Cir.), *cert. denied*, 518 U.S. 1027 (1996), the court held that "[t]o satisfy [RICO's] interstate commerce requirement, only a slight effect on interstate commerce is required." *Id*. at 1526; *see also United States v. Riddle*, 249 F.3d 529, 538 (6th Cir.), *cert. denied*, 534 U.S. 930 (2001) ("a *de minimus* connection suffices for a RICO enterprise that 'affects' interstate commerce"). Furthermore, the planned community Gainey Ranch markets itself throughout the United States and the world as a destination to visit, stay and live, and includes places of public accommodation, which are considered part of the interstate commerce system of the United States and thus regulated by the United States Congress. *E.g. see* 42 U. S. C. § 2000a(b).

112. This illegal scheme systematically: uses the mail and the wire to transmit false and fraudulent documents in violation of 18 U.S.C. §§ 1341 and 1343; utilizes obstruction of justice in violation of 18 U.S.C. §§ 1503 and 1512 (c); and involves conspiracy to commit money laundering in violation of 18 U.S.C. § 1956 (h). Following in the footsteps of the Supreme Court in *Turkette*, under a preponderance standard this

55

**COMPLAINT**

associated-in-fact enterprise (the actor) has engaged in a series of predicate acts, 18 U.S.C. § 1961(1), that are defined as racketeering activity because the acts violate the federal mail and wire fraud statutes 18 U.S.C. §§ 1341 and 1343 and the enterprise engaged in conspiracy to commit mail fraud and wire fraud in violation of 18 U.S.C. § 1962(d). The Association, its employees, its officers, its directors and its attorneys have violated the Racketeer Influenced Corrupt Organization Act. 18 U.S.C. § 1962.

113. The Defendants exploited misrepresentations and/or omissions and implemented a campaign to force Plaintiff and others to bear the burden of investigating and applying law to them. As stated herein, the Defendants, individually or collectively, and through the conduct of the Enterprise, engaged in numerous acts of fraud and/or have devised an overall scheme or artifice to defraud, and are attempting to commit fraud and carry out such schemes, for instance, conspiracy to commit mail fraud, wire fraud and obstruction of justice in violation of 18 U.S.C. § 1962(d), acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343, respectively, obstruction of justice in violation of 18 U.S.C. §§ 1512(c) and 1503, and conspiracy to commit money laundering in violation of 18 U.S.C. § 1956 (h), which constitute "predicate acts" under 18 U.S.C. § 1961 in furtherance of their campaign to enhance their wealth through unlawful means, beginning at least as early as August 2015 and continuing to date, communicating in bad faith to Plaintiff, witnesses, this court and others while concealing material information from these parties, as well as misrepresenting the facts. Having knowledge of the falsity and/or fraudulent incompleteness of the representations, all in an effort to deprive the

**COMPLAINT**

Defendants' targets of money and property that Defendants' had no right to seek or obtain, the Defendants concealed facts, such as: the fraudulent public recording and the issues contained in the fraudulent complaint filed at the McDowell Mountain Justice Court which were discovered by Plaintiff on December 1, 2015 and the motion to transfer and related order which were discovered by Plaintiff on or around April 1, 2017. *Rotella v. Wood*, 528 U.S. 549 (2000)

## 8. Conspiracy to Commit Mail Fraud, Wire Fraud and Obstruction of Justice. Violation of 18 U.S.C. § 1962(d)

### RELEVANT PERSONS AND ENTITIES

114. The Association., an Arizona corporation, pursuant to the records of the Arizona Corporation Commission, maintains an office in Scottsdale, Arizona.

115. The Association's primary purpose is to maintain the common areas of the planned community, which is considered owned by all the members/property owners in the planned community.

116. Current officers and directors of the Association with longevity of service are, at least, Karen Epstein and Jim Funk. Some of the Association's officers and directors are full time residents at Gainey Ranch and others are seasonal residents and reside throughout the United States and outside the United States. It is unknown to Plaintiff what the Association's officers and directors consider their primary state of residency or country of residency. The Association's officers and directors are responsible for the

57

**COMPLAINT**

activities of the Association, subject to Arizona statutes governing the conduct of property owners' associations (The Arizona Planned Community Statutes - A.R.S. §§ 33-1801, et seq., The Arizona Condominium Act - A.R.S. §§ 33-1201, et seq., and The Arizona Nonprofit Corporations Act - A.R.S. §§ 10-3101 through 10-11031. The Association can also conduct its activities based on its Covenants, Conditions, and Restrictions, but only to the extent that these terms obey Arizona law.

117 Attorneys Charlene A. Cruz, Maureen Martha Connolly, Marion Elizabeth Mulcahy, Paige Elizabeth Marks and Lauren Ashleigh Vie have been the Association's selected agents related to this matter. One of the Association's attorneys, Ms. Mulcahy, is also the Association's statutory agent. The conduct of the Association's attorneys is imputed to their client, since allowing a party to evade the consequences of the acts or omissions of their freely selected agents would be inconsistent with system of representative litigation.

118. Defendants initiated a fraudulent legal proceeding against Plaintiff at the McDowell Mountain Justice Court and attempted to extort money from Plaintiff based on fraudulent claims and to damage Plaintiff's good name and cause injuries to his business and property if Plaintiff did not pay.

## BACKGROUND

119. The Defendants have subjected Plaintiff to an illicit scheme to harass him, smear his good name, and use the court as a conduit of theft of Kraft's business and property, including his time.

58

COMPLAINT

120. In this scheme, Defendants: (a) used the system for public recording to record a false and fraudulent document; (b) used the mail and the wire to transmit a series of false and fraudulent documents, including false and fraudulent ledgers and statements; and (c) used courts to file a series of false and fraudulent statements and documents.

## THE CONSPIRACY

121. From in or about at least August 2015, through present, the Defendants did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate and agree with each other, to commit certain offenses against Plaintiff, that is:

(a) to devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, knowing that they were false and fraudulent when made, and causing to be delivered certain mail matter by the United States Postal Service and any private or commercial interstate carrier, according to the directions thereon, for the purpose of executing the scheme, in violation of Title 18, United States Code, Section 1341;

## PURPOSE OF THE CONSPIRACY

122. It was a purpose of the conspiracy that the Defendants and their conspirators would obtain property through false pretenses, representations and promises, all in order to obtain substantial economic benefits for themselves and others through the payment of

59

fees, wages, bonuses, and other monies, and unauthorized diversions, misuse, and misappropriation of funds and property.

## MANNER AND MEANS OF THE CONSPIRACY

123. The manner and means by which the Defendants and their conspirators sought to accomplish the objects and purpose of the conspiracy included, among other things, the following:

124. It was a part of the conspiracy that the Defendants and their conspirators would create and cause to be created false and misleading court proceedings and records and other documents concerning legal proceeding, through, among other things, the following means:

**The false and fraudulent public recording**

125. It is an undisputable fact that on August 28, 2015, the same date as the date of the complaint that was filed 3 days later on August 31, 2015, the Association's attorneys recorded in the public records of Maricopa County that "Rune Kraft, an individual, and Transcycle, an unincorporated entity" owed "$ 4,306.62 in lienable amounts" (Recording No. 2015-0626908) and that **the public recording was blatantly false and fraudulent**.

126. It is an undisputable fact that the Association received the April, May and June 2015 monthly assessments on July 31, 2015 and that under the rule of law, the Associations may have had a right to be able to potentially collect $ 136.80 in monetary interest charged pursuant to Section 33-1803 (the maximum allowable late fee, as

**COMPLAINT**

explained above, would be ten percent of $ 456.00 times 3 which is $ 136.80) [12], but that needed to be weighed against the Association taking over 4 months to attend to and fix a critical problem that caused severe problems with dust and dirt to enter a dwelling.

127. It is an undisputable fact that the Association received the July 2015 monthly assessment on July 31, 2015, which is the month of July and thus not late.

128. It is an undisputable fact that the Association received the August 2015 monthly assessment on August 12, 2015, which is the month of August and thus not late.

129. It is an undisputable fact that Recording No. 2015-0626908 states that $ 4,306.62 is owed, which is false and fraudulent as this amount: includes the month of July 2015, which was not paid late (*see* A.R.S. § 33-1803); includes the month of August 2015, which was not paid late (*see* A.R.S. § 33-1803); includes the months of April, May and June 2015, which was paid  but paid late; and that under the rule of law, A.R.S. § 33-1807 (A), only after the entry of a judgment in a civil suit can the Association obtain a lien for fees other than charges for late payment of assessments pursuant to Section 33-1803.

130. And, of course, the public recording was false and fraudulent because it stated that "Rune Kraft, an individual, and Transcycle, an unincorporated entity" owed "$

---

[12] A lien for an unpaid assessment is extinguished unless proceedings to enforce the lien are instituted within three years after the full amount of the assessment becomes due. A.R.S. § 33-1807 F. A dismissal without prejudice means that a claim may be refiled if all other legal requirements, including statutes of limitation, have been met. Justice Court Rules of Civil Procedure Rule 144 f.

COMPLAINT

4,306.62 in lienable amounts". The amounts in question are for a period after May 19, 2011, when Plaintiff sold the property. And Transcycle, a purported unincorporated entity, does not exist and cannot own property.

131. Under Arizona law, it is a class 6 felony to destroy, alter, or falsify public records with intent to defraud or deceive someone.  *See* A.R.S. § 13-2407.

132. Under Arizona law, it is a class 2 misdemeanor or a class 6 felony to assist another in profiting or benefiting from the commission of an offense. *See* A.R.S. § 13-2408.

133. Under Arizona law, it is a class 5 or 3 felony by means of bribery, misrepresentation, intimidation or force or threats of force to obstruct, delay or prevent the communication of information or testimony relating to a violation of any criminal statute to a peace officer, magistrate, prosecutor, or grand jury or, who retaliates on account of the giving any such information or testimony to a peace officer, magistrate, prosecutor, or grand jury. *See* A.R.S. § 13-2409.

134. Under Arizona law, it is a class 3 misdemeanor or a class 6 felony to engage in compounding; knowingly accepting or agreeing to accept any financial benefit as consideration for refraining from seeking prosecution of an offense or refraining from reporting to law enforcement authorities the commission or suspected commission of any offense or information relating to the offense. *See* A.R.S. § 13-2405.

135. It has been a federal crime in the United States since 1872 to use the mail and the wire in any fraudulent scheme. *See* 18 U.S.C. § 1341 and 18 U.S.C. § 1343. The false

**COMPLAINT**

and fraudulent public recording was filed using both the wire, the words "electronic recording" is shown on the recording, and the mail, the words "mail to" is shown on the recording.

136. The public recording also violated several provisions of The Fair Debt Collection Practices Act, including 15 U.S.C. §§ 1692 d and e. For example, 15 U.S.C. § 1692 e states that "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." And 15 U.S.C. § 1692 e (2)(A) prohibits "the false representation of the character, amount, or legal status of any debt. The wording "pursuant to 15 U.S.C. Section 1692 E (11)" and "this information is from a debt collector" <u>is shown on the recording</u>.

**The false and fraudulent complaint**

137. It is an undisputable fact that the complaint dated August 28, 2015 and filed with the McDowell Mountain Justice Court on August 31, 2015 shows the same parties and amounts as the public recording and the complaint is false and fraudulent for the same reasons. **<u>The complaint,</u>** as the public recording, **<u>was blatantly false and fraudulent</u>**, which was thus not filed in good faith and violated Justice Court Rules of Civil Procedure Rule 109 (b) which requires truthfulness, good faith, and not making court filings for the purpose of harassment.

**COMPLAINT**

**The McDowell Mountain Justice Court, even assuming no payments had been made to the Association, <u>an assumption that is false as the property owner made all the payments</u>, would have had the exclusive jurisdiction over the Association action until January 31, 2017**

138. It is an undisputable fact that even assuming no payments had been made, an assumption that is false as the property owner made all the payments, the McDowell Mountain Justice Court would have had the exclusive jurisdiction over the Association action until January 31, 2017.

139. On November 28, 2016, the day of the trial, the amount involved would be $ 8,754 (April through December 2015 - $ 456 (monthly assessment) x 9 (months) plus January through October 2016 - $ 465 (monthly assessment) x 10 (months)); on December 7, 2016, the day of the motion to transfer, the amount involved would be $ 9,219 (the amount involved in November plus $ 465); and on January 4, 2017 and/or January 17, 2017, the dates of court filings related to order of dismissal, the amount involved would be $ 9,684 (the amount involved in December plus $ 465). The amount involved, exclusive of interest, costs, and awarded attorney fees when authorized by law was less than $ 10,000.00 and the justice court had exclusive jurisdiction. *See* Arizona Constitution, ARTICLE VI. JUDICIAL DEPARTMENT, Section 32. C. "The civil jurisdiction of courts inferior to the superior court and of justice courts shall not exceed the sum of ten thousand dollars, exclusive of interest and costs.". *Also see* http://justicecourts.maricopa.gov/CaseTypes/civilsuits.aspx – "Jurisdictional Limit:  The justice courts have exclusive jurisdiction or the authority to hear all civil actions when the

COMPLAINT

amount involved, exclusive of interest, costs and awarded attorney fees when authorized by law, is $10,000.00 or less."

**The fraud related to the "Motion to Transfer to Superior Court" of December 7, 2016 and the "Order Granting Motion to Transfer to Superior Court" of December 28, 2016**

140. It is an undisputable fact that based on the records produced and statements made during the trial on November 28, 2016, including the specific undisputed facts that Kraft had not owned the property in question since May 19, 2011, and at that time no assessments were owed, the trial judge ruled that Kraft was an "improper party" (the words used by the trial judge when he dismissed the case as to Kraft). And on January 4, 2016 Kraft was dismissed from the Association action. The "Motion to Transfer" stated:

> "this claim now exceeds the justice court jurisdictional limit. When this lawsuit was originally filed, the claim was less than $ 10,000 and therefore within the justice court's jurisdictional limitation. The claim was originally $ 4,306.61. However, because the amounts in dispute now exceeds the justice court jurisdictional limitation of $ 10,000, Plaintiff is requesting that this court allow Plaintiff to transfer the matter to Superior Court to proceed forward with the case, including but not limited to, filing an Application for Default and Affidavit in Support of the Application for Default against Defendant, Transcycle."

141. It is an undisputed fact that on December 7, 2016, even assuming no payments had been made, an assumption that is false as the property owner made all the payments, the amount involved would be $ 9,219.

142. The "Motion to Transfer" was thus fraudulent and violated law, including Justice Court Rules of Civil Procedure Rule 109 (b) which requires truthfulness, good faith, and not making court filings for the purpose of harassment.

143. As to the "defendant" Transcycle, a purported unincorporated entity:

➢ It is an undisputed fact that this entity does not exist;

➢ It is an undisputed and undisputable fact that an entity that does not exist cannot own property;

➢ And it is an undisputed and undisputable fact that an entity that does not exist cannot have contractual obligations.

144. Ownership of property in the Gainey Ranch community and related contractual CC&R's based obligations are the cornerstones of the Association's claims, which cannot be brought against non-existent entities. An entity that does not exist cannot be a party in a lawsuit, as:

➢ It cannot be served with a summons and complaint;

➢ It cannot be served with motions;

➢ It cannot take part in discovery;

➢ It cannot be a witness;

➢ And it cannot take part in trials.

66

**COMPLAINT**

145. This is memorialized in a number of different ways, including in the form of procedural requirements: 17B A.R.S. Justice Court Civ. Proc. Rules ("JCCPR") Rule 113 (Serving a Summons and Complaint); JCCPR Rule 128 (c) **(Form of a motion; service; required notice);** JCCPR Rule 120 (b) (General rule governing serving court filings); JCCPR Rule 140 (a) **(When a default judgment may be entered);** JCCPR Rule 140 (b) **(Application for entry of default); and** JCCPR Rule 140 (g) **(Form of default judgment).**

146. A court will never have jurisdiction over an entity that does not exist and a court will never be able to respect all the legal rights, including "due process of law", of an entity that does not exist. An entity that does not exist can never be a party-litigant and use courts to decide the merits of a dispute or of particular issues (e.g. *see Warth v. Seldin*, 422 U.S. 490 (1975)).

147. And any orders/judgments of any kind against "TRANSCYCLE, an unincorporated entity" are **not voidable; the orders/judgments are void.**

**The fraud related to the purported "litigation guarantee"**

148. It is an undisputable fact, based on the records produced and statements made during the trial on November 28, 2016, including the specific undisputed facts that Kraft had not owned the property in question since May 19, 2011, and at that time no assessments were owed, that the purported "litigation guarantee" rests on an issue that the trial judge concluded "doesn't affect the litigation here".

**COMPLAINT**

THE COURT:

> That doesn't affect the litigation here. The litigation here is between the HOA and the owner of record. The deficiency for the HOA is there's nothing, apparently, in the CCNRs that requires some sort of filing and fee in order to transfer responsibility for the property.

> See TRANSCRIPT RE: BENCH TRIAL, November 28, 2016
> Page 54, Lines 10 - 14

THE COURT:

> That as of the time of transfer, it doesn't appear that the HOA was owed any money --

MS. MULCAHY:

> That's correct.

THE COURT:

> -- which is a problem for setting aside a transfer.

> See TRANSCRIPT RE: BENCH TRIAL, November 28, 2016
> Page 55, Lines 20 - 24

149. As to the so called "determination in June of 2015" (*see* TRANSCRIPT RE: BENCH TRIAL, November 28, 2016, Page 55, Line 18) which shows up in the purported "litigation guarantee" on page 5 as item 9 and item 10 (*see* Case 2:17-cv-02092-MHB, Document 7-2) both of these recordings are false and fraudulent for two reasons. First, the June 22, 2011 default judgment from Case No. 2:10-cv-01776-VBF (OP) is void as

the court that issued the default judgment lacked subject-matter jurisdiction. [13] And second, Recording No. 2015-0132695 purportedly rests on a case at the U.S. District Court, State of Arizona and Recording No. 2015-0436775 purportedly rests on a case at the Maricopa County Superior Court and Kraft has never been served with any summons and complaint related to these two cases. Thus, any purported judgments that Recording No. 2015-0132695 and Recording No. 2015-0436775 rest on aren't voidable, the judgments are void.

150. Under Arizona law it is a class 6 felony to destroy, alter, or falsify public records with intent to defraud or deceive someone. *See* A.R.S. § 13-2407. The fraudulent public recording (shows up in the purported "litigation guarantee" on page 6 as item 11) and the two other false and fraudulent public recordings dealt with immediately above, was used by Plaintiff and its attorneys as a means to obtain an insurance policy: Guarantee No.: 360-LG-14160640, File No.: 14160640-014-ROC-RC2, Title Resources Guaranty Company. *See* Case 2:17-cv-02092-MHB, Document 7-2. Thus, the purported

---

[13] Kraft has multiple <u>ongoing</u> legal disputes with Oldcastle Precast, Inc., a Washington corporation, and Inland Concrete Enterprises, Inc. Employee Stock Ownership Plan, an employee stock ownership plan, based in Los Angeles, California. None of these disputes have anything to do with the Association and/or any of the purported contractual obligations that are the subject of the Association action. Also pursuant to A.R.S. § 33-1807 B. any purported lien of the Association is prior to any purported liens of anybody else. The conduct is thus frivolous. But **the conduct is for the purpose of increasing the level of scandal to embarrass** Kraft. **Both the conduct of making court filings that are frivolous and the conduct of making court filings for the purpose of increasing the level of scandal to embarrass both Arizona and Federal Rules of Civil Procedure, Rule 11.**

COMPLAINT

"litigation guarantee" rests on conduct that the Arizona legislature has defined as a fraudulent practice and unlawful. *See* A.R.S. § 20-463. And there are other red flags: the insurance company stated in a letter to Kraft that the litigation guarantee is not applicable in the Association case; it defines the term "public records" as "those records established under California statutes at Date of Guarantee" (*see* Guarantee Conditions 1 d) and the property in question is located in Arizona; the policy does not acknowledge and is plainly contradicted by the documents that were recorded when Kraft sold the property on May 19, 2011; and it was issued 3 days after the trial (*see* "Date of Guarantee" on page 1) and rests on information that the Defendants knew violated the court's findings and order.

**The fraud related to the purported "ledgers"**

151. It is an undisputable fact that the Association had received since May 19, 2011 and was receiving the monthly assessments from a member of the Association, a corporation, including for the relevant period.

152. A corporation can be a member/property owner in the community and the Association had received all the monthly assessments from the member/property owner in the community, this corporation.

153. As to a corporation being able to be a member/property owner in the community, *see* the *voir dire* examination of James A. Funk, the Association's Executive Director, during the trial on November 28, 2016:

COMPLAINT

*BY THE COURT:*

*Q      Anything that precludes an entity like a corporation from owning a home?*

*A      No.*

> *See* TRANSCRIPT RE: BENCH TRIAL, November 28, 2016
> Page 32, Lines 17 - 19

154. As to the true and correct payment history, the fact that the property owner had made and was making all the monthly payments related to the assessments in full and in a timely manner for the relevant period has been entered into the records of the Association action on multiple occasions, including by Kraft under penalty of perjury.

155. Kraft's examination of James A. Funk, the Association's Executive Director, during the trial on November 28, 2016:

*BY MR. KRAFT:*

*Q      Okay. So, basically, this particular document contains all payments from April 2015 to November 2016. The checks are coming from Transcycle, Inc. Are the checks coming from Transcycle, Witness?*

*A      Transcycle, Inc. yes.*

*Q      And the last check you had here is for what period? What is the date of the last check?*

*A      November 11th, 2016.*

> *See* TRANSCRIPT RE: BENCH TRIAL, November 28, 2016
> Page 41, Lines 5 – 12

71

156. This testimonial evidence under penalty of perjury from the Association's Executive Director confirm that all payments from April 2015 through November 2016, the period subject to controversy at the time of the trial on November 28, 2016, had been made by this corporation.

157. The purported "ledgers" are also fraudulent related to amounts, assuming they had been issued to the member/property owner in the community and assuming the member /property owner had not made the payments related to the monthly assessments, as the purported charges for the late payment of assessments violate A.R.S. § 33-1803 (A) and (B).

158. And the purported "ledgers" are fraudulent related to the Association billing for legal services. The Rules of the Supreme Court of Arizona, Rule 31 regulates the practice of law and the Rule's Section (b) **"Authority to Practice" (with some exceptions, none applicable here) requires active membership of the State Bar. The Association is not authorized to practice law (*see* Rule 31, (a) 2 A) and cannot bill for** legal services based on the unauthorized practice of law (*see* **Rule 31, (a) 2 B).**

159. In this scheme, the Association has become and serves as a *de facto* law firm that monthly bill for legal services, when the Association is not licensed to engage in the practice of law, including billing for legal services. The Association treats the members or purported members of its Association as clients buying legal services. In this scheme, the association is converted into an extension of the attorneys' law practice and bills for legal services.

**COMPLAINT**

160. The Association is not a law firm and cannot bill for legal services. Kraft is not and has never agreed to become a client of the Association's unauthorized practice of law.

161. Finally, at the same time that the Association has no right to bill anybody for legal services it also has no right to record/file liens against anybody based on an amount that includes legal services. Only **after the entry of a judgment in a civil suit** can a plaintiff claim any legal fees and costs (A.R.S. § 33-1807 (A)).

162. Due to the fact that a series of statements have been made to courts under penalty of perjury, Defendants' attorneys have indisputably committed perjury A.R.S. § 13-2702, which are class 4 felonies, and false swearing A.R.S. § 13-2703, which are class 6 felonies.

**The fraud related to Oldcastle Precast, Inc.**

163. For the purpose of seeking to avoid the adjudication of the Association action at this court, the Association's attorneys provided false information to this court about Oldcastle Precast, Inc. *See* Case 2:17-cv-02092-MHB, Document 7-3.

164. Pursuant to *Hertz Corp. v. Friend*, 559 U.S. 77 (2010), Oldcastle Precast, Inc. is a citizen of Washington as it is a Washington corporation. The State of Washington is Oldcastle's "nerve center", which is the test for determining corporate citizenship in the context of 28 U.S.C. § 1332.

**COMPLAINT**

**The fraud related to the Inland ESOP**

165. And for the purpose of seeking to avoid the adjudication of the Association action at this court, the Association's attorneys provided false information to this court about the Inland Concrete Enterprises, Inc, Employee Stock Ownership Plan (Inland ESOP).

166. The Inland Concrete Enterprises, Inc, Employee Stock Ownership Plan is a separate and distinct legal entity from Inland Concrete Enterprises, Inc. The fact that Oldcastle Precast, Inc. acquired the shares that the Inland ESOP owned in Inland Concrete Enterprises, Inc. did not affect in any manner the citizenship of the Inland ESOP, as falsely and fraudulently portrayed by the Defendants. *See* Case 2:17-cv-02092-MHB, Document 7, Page 8 of 10, paragraph 3

167. The Inland ESOP is a citizen of California.

**The fraud related to the purported "default"**

168. Pursuant to Arizona Rules of Civil Procedure for the Superior Courts of Arizona Rule 12 (b) a motion to dismiss is a defense that may be asserted following the receipt of a complaint and before filing an answer to a complaint

169. Under Federal Rules of Civil Procedure Rule 12 (4) (A) if the court denies the motion to dismiss, the responsive pleading must be served within 14 days after notice of the court's action.

74

**COMPLAINT**

170. Under Arizona Rules of Civil Procedure for the Superior Courts of Arizona Rule 12 (a) (2)(A) a court's denial of a motion creates a time after notice of the court's action for the defendant to act. Specifically, if the court denies a motion to dismiss, the responsive pleading must be served within 10 days after notice of the court's action.

171. The Defendants acted in defiance of statutorily defined periods. Specifically, under Federal Rules of Civil Procedure Rule 12 (4) (A) if the court denies the motion to dismiss, the responsive pleading must be served within 14 days after notice of the court's action. These issues are at the core of the problem with the Association's Applications for Default and Entry of Default of September 27, 2017. Yes the U.S. District Court for the District of Arizona on September 26 remanded this matter to this court and denied the motion to dismiss but the Association was neither authorized under federal rule nor state rule to act on that on September 27. As to state law, under Arizona Rules of Civil Procedure for the Superior Courts of Arizona Rule 12 (a)(2)(A) a court's denial of a motion creates a time after notice of the court's action for the defendant to act. Specifically, if the court denies a motion to dismiss, the responsive pleading must be served within 10 days after notice of the court's action. The Association could not assert on September 27, 2017 that Kraft had defaulted pursuant to both federal statutory law, Federal Rules of Civil Procedure Rule 12 (4) and state statutory law, Arizona Rules of Civil Procedure for the Superior Courts of Arizona Rule 12 (a)(2)(A). Related to the instant issue the federal statute would apply as federal law is supreme (the Supremacy

Clause) when there is a conflict between a federal and a state statute and the relevant order was issued by a federal court.

**OVERT ACTS**

172. In furtherance of the conspiracy and to achieve the objects and purpose thereof, at least one of the conspirators committed and caused to be committed, in the District of Arizona and elsewhere, at least one of the following overt acts, among others:

173. On August 28, 2015 the Defendants caused a fraudulent complaint against Plaintiff to be issued falsely stating that "Rune Kraft, an individual, and Transcycle, an unincorporated entity" owed "$ 4,306.62 in lienable amounts" to the Association.

174. On August 28, 2015 the Defendants caused a fraudulent public recording to be filed with the Maricopa County Recorder falsely stating that "Rune Kraft, an individual, and Transcycle, an unincorporated entity" owed "$ 4,306.62 in lienable amounts" to the Association (Recording No. 2015-0626908).

175. On August 31, 2015 the Defendants caused a fraudulent complaint against Plaintiff to be filed at the McDowell Mountain Justice Court falsely stating that "Rune Kraft, an individual, and Transcycle, an unincorporated entity" owed "$ 4,306.62 in lienable amounts" to the Association.

176. On December 7, 2016 the Defendants caused a fraudulent motion to transfer to be filed at the McDowell Mountain Justice Court falsely stating that the amount in

controversy exclusive of interest, costs, and awarded attorney fees was more than $ 10,000 and falsely stating that Plaintiff had been served the document.

177. On or around July 14, 2017 the Defendants caused fraudulent statements and documents to be filed at the United States District Court for the District of Arizona. Specifically, the presentation was false as to: the party named as having obligations to pay the Association; the monthly assessments not having already been paid; the purported charges for late payment of assessments; and the Association billing for legal services; a litigation guarantee; Oldcastle Precast, Inc.'s corporate citizenship; and portrayals of the Inland Concrete Enterprises, Inc. Employee Stock Ownership Plan being the same legal entity as Inland Concrete Enterprises, Inc. and Inland Concrete Enterprises, Inc.'s corporate citizenship.

178. On or around September 27, 2017 the Defendants caused fraudulent applications for default and entry of default to be filed at the Maricopa County Superior Court. The Defendants knew that the applications were fraudulent based on Federal Rules of Civil Procedure Rule 12(4)(A), which is the governing law, and state law (Arizona Rules of Civil Procedure for the Superior Courts of Arizona, Rule 12(a)(2)(A).

179. On or around October 25, 2017 the Defendants caused fraudulent statements and documents to be filed at the Maricopa County Superior Court. The fraudulent presentation included purported ledgers, which were false and fraudulent 4 ways: (1) the party named as having obligations to pay the Association; (2) the monthly assessments

**COMPLAINT**

not having already been paid; (3) the purported charges for late payment of assessments; and (4) the Association billing for legal services.

180. On or around July 25, 2018 the Defendants caused a document to be filed at the Arizona Court of Appeals, Division One falsely stating that Rune Kraft had been served with the document.

181. On or around November 13, 2018 the Defendants caused a document to be filed at the Arizona Court of Appeals, Division One falsely stating that Rune Kraft had been served with the document.

182. The acts alleged in Predicate Acts One through Twenty-two of the Complaint are realleged and incorporated herein as additional overt acts in furtherance of the conspiracy and to achieve the objects and purpose thereof.

183. All in violation of Title 18, United States Code, Section 1962(d).

## 9. Mail Fraud. 18 U.S.C. § 1961(1)(B) Predicate Acts (18 U.S.C. § 1341) Violation of 18 U.S.C. §§ 1962(a)(b)(c)(d).

184. Paragraphs 1 through 183 of this Complaint are re-alleged and incorporated by reference as though fully set forth herein.

185. From in or about at least August 2015, through present, in the District of Arizona and elsewhere, the Defendants aided and abetted by each other and others, did knowingly and with intent to defraud devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent

78

pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made.

## PURPOSE OF THE SCHEME AND ARTIFICE

186. It was a purpose of the scheme and artifice that the Defendants and their co-schemers would obtain claims against Plaintiff' through false pretenses and representations, all in order to obtain substantial economic benefits for themselves and others through the payment of fees, wages, bonuses, and other monies, and unauthorized diversions, misuse, and misappropriation of funds.

## SCHEME AND ARTIFICE

187. Paragraphs 123 through 171 of this Complaint are re-alleged and incorporated by reference herein as a description of the scheme and artifice.

## USE OF THE MAILS

188. On or about the dates specified as to each act below, the Defendants, for the purpose of executing the aforesaid scheme and artifice to defraud, and attempting to do so, knowingly deposited and caused to be deposited the matters and things listed below, and caused the matters and things to be sent and delivered, by private and commercial interstate carrier and by the United States Postal Service:

**COMPLAINT**

| PREDICATE ACT # | APPROX. DATE | DESCRIPTION OF MAIL FRAUD |
|---|---|---|
| 1 | 25-Aug-15 | Mail matter containing a document to be recorded with the Maricopa County Recorder falsely stating that "Rune Kraft, an individual, and Transcycle, an unincorporated entity" owed "4,306.62 in lienable amounts" to the Association sent and delivered via United States Postal Service from the Defendants' attorneys in Phoenix, Arizona, and delivered to the Maricopa County Recorder in Phoenix, Arizona |
| 2 | 28-Aug-15 | Mail matter containing a document publicly recorded at the Maricopa County Recorder falsely stating that "Rune Kraft, an individual, and Transcycle, an unincorporated entity" owed "4,306.62 in lienable amounts" to the Association caused to be sent and delivered via United States Postal Service from the Maricopa County Recorder in Phoenix, Arizona, and delivered to the Defendants' attorneys in Phoenix, Arizona by the Defendants' attorneys |
| 3 | 7-Dec-16 | Mail matter containing a document to be filed at the McDowell Mountain Justice Court falsely stating that the amount in controversy exclusive of interest, costs, and awarded attorney fees was more than $ 10,000 and falsely stating that Rune Kraft had been served the document, caused to be sent and delivered via United States Postal Service from the Defendants' attorneys in Phoenix, Arizona, to the McDowell Mountain Justice Court in Phoenix, Arizona |
| 4 | 14-Jul-17 | Mail matters containing: purported ledgers, which were false and fraudulent 4 ways: (1) the party named as having obligations to pay the Association; (2) the monthly assessment not having already been paid; (3) the purported charges for late payment of assessments; and (4) the Association |

80

| | | | billing for legal services; a false and fraudulent litigation guarantee; false and fraudulent portrayals of Oldcastle Precast, Inc.'s corporate citizenship; and false and fraudulent portrayals of the Inland Concrete Enterprises, Inc. Employee Stock Ownership Plan being the same legal entity as Inland Concrete Enterprises, Inc. and Inland Concrete Enterprises Inc.'s corporate citizenship caused to be sent and delivered via United States Postal Service from the Defendants' attorneys in Phoenix, Arizona to Rune Kraft in Wilmington, Delaware |
| 5 | 14-Jul-17 | | Mail matters containing: purported ledgers, which were false and fraudulent 4 ways: (1) the party named as having obligations to pay the Association; (2) the monthly assessment not having already been paid; (3) the purported charges for late payment of assessments; and (4) the Association billing for legal services; a false and fraudulent litigation guarantee; false and fraudulent portrayals of Oldcastle Precast, Inc.'s corporate citizenship; and false and fraudulent portrayals of the Inland Concrete Enterprises, Inc. Employee Stock Ownership Plan being the same legal entity as Inland Concrete Enterprises, Inc. and Inland Concrete Enterprises Inc.'s corporate citizenship caused to be sent and delivered via United States Postal Service from the Defendants' attorneys in Phoenix, Arizona to the U.S. District Court for the District of Arizona in Phoenix, Arizona |
| 6 | 27-Sep-17 | | Mail matters containing Applications for Default and Entry of Default, which were false and fraudulent based on both federal law (Federal Rules of Civil Procedure Rule 12(4)(A)), which is the governing law, and state law (Arizona Rules of Civil Procedure for the Superior Courts of |

COMPLAINT

| | | Arizona Rule 12(a)(2)(A) caused to be sent and delivered via United States Postal Service from the Defendants' attorneys in Phoenix, Arizona to the Maricopa County Superior Court in Phoenix, Arizona |
|---|---|---|
| 7 | 25-Oct-17 | Mail matters containing purported ledgers, which were false and fraudulent 4 ways: (1) the party named as having obligations to pay the Association; (2) the monthly assessment not having already been paid; (3) the purported charges for late payment of assessments; and (4) the Association billing for legal services, caused to be sent and delivered via United States Postal Service from the Defendants' attorneys in Phoenix, Arizona to the Maricopa County Superior Court in Phoenix, Arizona |
| 8 | 25-Oct-17 | Mail matters containing purported ledgers, which were false and fraudulent 4 ways: (1) the party named as having obligations to pay the Association; (2) the monthly assessment not having already been paid; (3) the purported charges for late payment of assessments; and (4) the Association billing for legal services, caused to be sent and delivered via United States Postal Service from the Defendants' attorneys in Phoenix, Arizona to Rune Kraft in Wilmington, Delaware |
| 9 | 25-Jul-18 | Mail matter containing a document to be filed at the Arizona Court of Appeals, Division One falsely stating that Rune Kraft had been served with the document, caused to be sent and delivered via United States Postal Service from the Defendants' attorneys in Phoenix, Arizona to the Arizona Court of Appeals, Division One in Phoenix, Arizona |
| 10 | 13-Nov-18 | Mail matter containing a document to be filed at the Arizona Court of Appeals, Division One falsely stating that Rune Kraft had been |

82

COMPLAINT

served with the document, caused to be sent and delivered via United States Postal Service from the Defendants' attorneys in Phoenix, Arizona to the Arizona Court of Appeals, Division One in Phoenix, Arizona

189. Predicate Acts (18 U.S.C. § 1341) Violation of 18 U.S.C. §§ 1962(a)(b)(c)(d).

## 10.   Wire Fraud. 18 U.S.C. § 1961(1)(B) Predicate Acts (18 U.S.C. § 1343) Violation of 18 U.S.C. §§ 1962(a)(b)(c)(d).

190. Paragraphs 1 through 189 of this Complaint are re-alleged and incorporated by reference as though fully set forth herein.

191. From in or about at least August 2015, through present, in the District of Arizona and elsewhere, the Defendants aided and abetted by each other and others, known and unknown, did knowingly and with intent to defraud devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made.

## PURPOSE OF THE SCHEME AND ARTIFICE

192. It was a purpose of the scheme and artifice to enrich the Defendants and others at the expense of Plaintiff and others through false pretenses, representations and promises, all in order to obtain substantial economic benefits for themselves and others

83

**COMPLAINT**

through the payment of fees, wages, bonuses, and other monies, and unauthorized diversions, misuse, and misappropriation of funds.

## SCHEME AND ARTIFICE

193. Paragraphs 123 through 171 of this Complaint are re-alleged and incorporated by reference herein as a description of the scheme and artifice.

## USE OF THE WIRES

194. On or about the dates specified as to each act below, the Defendants, for the purpose of executing the aforesaid scheme and artifice to defraud, and attempting to do so, did knowingly transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures and sounds, as more particularly described below:

| PREDICATE ACT # | APPROX. DATE | DESCRIPTION OF WIRE FRAUD |
|---|---|---|
| 11 | 28-Aug-15 | Wire transmission of document recorded with the Maricopa County Recorder falsely stating that "Rune Kraft, an individual, and Transcycle, an unincorporated entity" owed "4,306.62 in lienable amounts", caused to be sent from the Maricopa County Recorder in Phoenix, Arizona to the server of the Maricopa County Recorder by the Defendants' attorneys |
| 12 | 14-Jul-17 | Wire transmission of documents that were false and fraudulent 4 ways: (1) the party |

84

COMPLAINT

| | | named as having obligations to pay the Association; (2) the monthly assessment not having already been paid; (3) the purported charges for late payment of assessments; and (4) the Association billing for legal services; a false and fraudulent litigation guarantee; false and fraudulent portrayals of Oldcastle Precast, Inc.'s corporate citizenship; and false and fraudulent portrayals of the Inland Concrete Enterprises, Inc. Employee Stock Ownership Plan being the same legal entity as Inland Concrete Enterprises, Inc. and Inland Concrete Enterprises Inc.'s corporate citizenship, from the Defendants attorneys in Phoenix, Arizona to the U.S. District Court for the District of Arizona in Phoenix, Arizona |
|---|---|---|
| 13 | 25-Jul-18 | Wire transmission of documents that were false at the Arizona Court of Appeals, Division One falsely stating that Rune Kraft had been served with the document, from the Defendants' attorneys in Phoenix, Arizona to the Arizona Court of Appeals, Division One in Phoenix, Arizona |
| 14 | 13-Nov-18 | Wire transmission of documents that were false at the Arizona Court of Appeals, Division One falsely stating that Rune Kraft had been served with the document, from the Defendants' attorneys in Phoenix, Arizona to the Arizona Court of Appeals, Division One in Phoenix Arizona |

195. Predicate Acts (18 U.S.C. § 1343) Violation of 18 U.S.C. §§ 1962(a)(b)(c)(d).

85

COMPLAINT

## 11.   Obstruction of Justice. 18 U.S.C. § 1961(1)(B) Predicate Acts (18 U.S.C. § 1512(c)). Violation of 18 U.S.C. §§ 1962(a)(b)(c)(d).

196. Paragraphs 1 through 195 of this Complaint are re-alleged and incorporated by reference as though fully set forth herein.

197. From in or about at least August 2015, through present, in the District of Arizona and elsewhere, the Defendants aided and abetted by each other and others, known and unknown, did knowingly and with intent to defraud devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made.

### PURPOSE OF THE SCHEME AND ARTIFICE

198. It was a purpose of the scheme and artifice to enrich the Defendants and others at the expense of Plaintiff and others through false pretenses, representations and promises, all in order to obtain substantial economic benefits for themselves and others through the payment of fees, wages, bonuses, and other monies, and unauthorized diversions, misuse, and misappropriation of funds.

### SCHEME AND ARTIFICE

199. Paragraphs 123 through 171 of this Complaint are re-alleged and incorporated by reference herein as a description of the scheme and artifice.

COMPLAINT

# OBSTRUCTION OF JUSTICE

200. On or about the dates specified as to each act below, the Defendants, for the purpose of executing the aforesaid scheme and artifice to defraud, and attempting to do so, did knowingly and corruptly alter, destroy, mutilate, or conceal a record, document, or other object, or attempted to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or otherwise obstructed, influenced, or impeded an official proceeding, or attempted to do so, as more particularly described below:

| PREDICATE ACT # | APPROX. DATE | DESCRIPTION OF OBSTRUCTION OF JUSTICE (18 U.S.C. § 1512(c)) |
|---|---|---|
| 15 | 14-Jul-17 | Entered false and fraudulent statements and documents at the U.S. District for the District of Arizona. The presented facts and documents were fraudulent 4 ways: (1) the party named as having obligations to pay the Association; (2) the monthly assessment not having already been paid; (3) the purported charges for late payment of assessments; and (4) the Association billing for legal services (Case 2:17-cv-02092-MHB, Document 7-1); a false and fraudulent litigation guarantee (Case 2:17-cv-02092-MHB, Document 7-2); false and fraudulent portrayals of Oldcastle Precast, Inc.'s corporate citizenship (Case 2:17-cv-02092-MHB, Document 7-3); and false and fraudulent portrayals of the Inland Concrete Enterprises, Inc. Employee Stock Ownership Plan being the same legal |

87

| | | entity as Inland Concrete Enterprises, Inc. and Inland Concrete Enterprises, Inc.'s corporate citizenship (Case 2:17-cv-02092-MHB, Document 7, Page 8 of 10, paragraph 3), knowing the presentation was false and fraudulent |
|---|---|---|

201. Predicate Acts (18 U.S.C. § 1512(c)) Violation of 18 U.S.C. §§ 1962(a)(b)(c)(d).

## 12.   Obstruction of Justice. 18 U.S.C.§ 1961(1)(B) Predicate Acts (18 U.S.C. § 1503). Violation of 18 U.S.C. §§ 1962(a)(b)(c)(d).

202. Paragraphs 1 through 201 of this Complaint are re-alleged and incorporated by reference as though fully set forth herein.

203. From in or about at least August 2015, through present, in the District of Arizona and elsewhere, the Defendants aided and abetted by each other and others, known and unknown, did knowingly and with intent to defraud devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made.

## PURPOSE OF THE SCHEME AND ARTIFICE

204. It was a purpose of the scheme and artifice to enrich the Defendants and others at the expense of Plaintiff and others through false pretenses, representations and

COMPLAINT

promises, all in order to obtain substantial economic benefits for themselves and others through the payment of fees, wages, bonuses, and other monies, and unauthorized diversions, misuse, and misappropriation of funds.

## SCHEME AND ARTIFICE

205. Paragraphs 123 through 171 of this Complaint are re-alleged and incorporated by reference herein as a description of the scheme and artifice.

## OBSTRUCTION OF JUSTICE

206. On or about the dates specified as to each act below, the Defendants, for the purpose of executing the aforesaid scheme and artifice to defraud, and attempting to do so, did knowingly and corruptly alter, destroy, mutilate, or conceal a record, document, or other object, or attempted to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or otherwise obstructed, influenced, or impeded an official proceeding, or attempted to do so, as more particularly described below:

| PREDICATE ACT # | APPROX. DATE | DESCRIPTION OF OBSTRUCTION OF JUSTICE (18 U.S.C. § 1503) |
|---|---|---|
| 16 | 25-Aug-15 | Caused the written statement described in Predicate Act # 1 to be signed |
| 17 | 25-Aug-15 | Signed the written statement described in Predicate Act # 1 |

89

| 18 | 1-Dec-16 | Caused a purported "litigation guarantee" to be issued resting on and containing information that the Defendants knew was both false and violated the court's finding and order based on the trial on November 28, 2016 |
| 19 | 7-Dec-16 | Caused the written statements described in Predicate Act # 3 to be signed |
| 20 | 7-Dec-16 | Signed the written statements described in Predicate Act # 3 |
| 21 | 14-Jul-17 | Caused the presentation described in Predicate Act # 5 to be signed |
| 22 | 14-Jul-17 | Signed the presentation described in Predicate Act # 5 |

207. Predicate Acts (18 U.S.C. § 1503) Violation of 18 U.S.C. §§ 1962(a)(b)(c)(d).

## 13.   Conspiracy to Commit Money Laundering. 18 U.S.C. § 1961(1)(B) Predicate Acts (18 U.S.C. § 1956(h)) Violation of 18 U.S.C. §§ 1962(a)(b)(c)(d).

208. Paragraphs 1 through 207 of this Complaint are re-alleged and incorporated by reference as though fully set forth herein.

## THE CONSPIRACY TO COMMIT MONEY LAUNDERING

209. Beginning in or around at least August 2015, the exact date being unknown to Plaintiff, through present, in the District of Arizona and elsewhere, the Defendants did knowingly and intentionally conspire, combine, confederate, and agree with each other,

90

COMPLAINT

to transport, transmit, or transfer a monetary instrument-and funds from a place in the United States to or through a place inside the United States, or to a place in the United States from or through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, that is, wire fraud, mail fraud, and fraud in connection with a case filed in a Court of the United States, in violation of Title 18, United States Code, Section 1956(a)(2)(A).

## MANNER AND MEANS OF THE CONSPIRACY

210. The manner and means by which the Defendants and their co-conspirators sought to accomplish the objects of the conspiracy included, among others, the following:

211. It was a part of the conspiracy that Defendants would cause the movement of monetary instruments- and funds of fraudulently obtained funds from and among bank accounts located in Phoenix, Arizona and elsewhere in the United States to various bank accounts located in Arizona and elsewhere in the United States, including as follows:

a. Defendants and others would cause banks to transfer funds into bank accounts located in the State of Arizona which were maintained by the Defendants;

b. Defendants and others would subsequently cause the transfer of funds in amounts exceeding $10,000 from bank accounts located in the State of Arizona into bank accounts located in Arizona and elsewhere in the United States; and

COMPLAINT

c. Defendants and others would cause the transfer of funds from bank accounts in the State of Arizona into bank accounts located in Arizona and elsewhere in order for the Defendants to exercise exclusive control over the funds.

212. It was further a part of the conspiracy that Defendants and others would cause the movement of monetary instruments- and funds of fraudulently obtained funds from and among bank accounts in Arizona and elsewhere in the United States into bank accounts in the State of Arizona and elsewhere, as follows:

a. Defendants and others would cause the transfer of funds from bank accounts in the State of Arizona into bank accounts in Arizona and elsewhere in order to pay entities who had to be included as part of the fraudulent scheme; and

b. Defendants would make thousands of dollars of corrupt payments to entities that aided in the fraudulent activities in the State of Arizona and elsewhere and these entities, in turn, would transport the funds and deposit them into bank accounts at financial institutions in the United States.

213. Predicate Acts (18 U.S.C. § 1956(h)) Violation of 18 U.S.C. §§ 1962(a)(b)(c)(d).

## 14.   The Defendants engaged in racketeering activity. 18 U.S.C. § 1961(1)

214. "Racketeering activity" means any act which is indictable under any of the following provisions of title 18, United States Code: section 1341 (relating to mail fraud),

92

section 1343 (relating to wire fraud), section 1503 (relating to obstruction of justice), section 1512 (relating to tampering with a witness, victim, or an informant). 18 U.S.C. § 1961(1)(B).

## 15. The Associated-In-Fact Enterprise Engaged in A Pattern of Racketeering Activity. 18 U.S.C. § 1961(5)

215. "Pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity. 18 U.S.C. § 1961(5)

216. "Pattern of racketeering activity" requires at least two acts of racketeering activity pursuant to 18 U.S.C. § 1961(5)

217. Defendants committed at least two acts of racketeering activity.

## 16. The Racketeering Activity Was Used to Steal Property

218. In Maricopa County, Arizona and elsewhere, in a matter within the jurisdiction of the legislative branch of the Government of the United States and the State of Arizona and subject to the legislatively passed statutes, Defendants knowingly and willfully made and caused to be made material false, fictitious, and fraudulent statements and representations distributed by mail or wire, that is, Defendants falsely reported and caused to be reported on documents and attachments thereto, which they then signed,

93

filed and caused to be filed by mail or wire with the County Recorder's office in

Maricopa County, Arizona and the courts of Maricopa County, Arizona: that Kraft in

August of 2015 still had a contract with the Association more than 4 years after he sold

the property on May 19, 2011 to a corporation ; that he had breached that contract based

monthly assessments for April, May, June, July and August 2015 purportedly not having

been paid; and that the Association had not received the monthly assessments for April,

May, June, July and August 2015 from the corporation Kraft sold the property to on May

19, 2011. When, in truth and in fact: Kraft sold the property to a corporation on May 19,

2011 and had no contract with the Association; Kraft's sale cannot be set aside because

no money was owed; the Association had received all monthly assessments from this

corporation and thus, the Association had no standing to sue because the Association had

suffered no injury; and the activities were a hoax and the purpose was to harass Kraft,

generate purportedly valid attorney's fees from harassing Kraft, smear his good name,

and use the court as a conduit of theft of Kraft's business and property, including his

time.


## 17.   The Stolen Property Was Used to Operate the Associated-In-Fact Enterprise

219.  In Maricopa County, Arizona and elsewhere, in a matter within the

jurisdiction of the legislative branch of the Government of the United States and subject

**COMPLAINT**

to the legislatively passed statutes, Defendants knowingly and willfully used and caused

to be used the stolen property, that is, Defendants used and caused to be used property

derived from specified unlawful activity to operate their business, solicit business by wire

and mail, build and maintain property by use of wire, mail and banks, bill for activities by

use of wire, mail and banks and collect funds from various entities by use of wire and

mail, which they then deposited and caused to be deposited in bank accounts in Arizona

and wired to various locations in the United States, constituting monetary transactions in

property derived from specified unlawful activity.

### 18.    The Defendants have violated the Racketeer Influenced Corrupt Organization Act. 18 U.S.C. § 1962.

220. 18 U.S. Code CHAPTER 96— RACKETEER INFLUENCED AND

CORRUPT ORGANIZATIONS contain: 18 U.S. Code § 1961. Definitions and 18 U.S.C.

§ 1961(1)(B) defines mail fraud, wire fraud, obstruction of justice and conspiracy to

commit money laundering (18 U.S.C. §§ 1341, 1343, 1512(c), 1503, 1956 (h)) as

predicate acts.

221. 18 U.S. Code § 1962 declares:

Prohibited activities

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or

95

**COMPLAINT**

indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.


222. 18 U.S.C. § 1962 (d) states that "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section".

223. The Defendants have violated the Racketeer Influenced Corrupt Organization Act. 18 U.S.C. § 1962

**COMPLAINT**

## 19.   Plaintiff Has Been Injured in His Business or Property by Reason of a Violation of 18 U.S.C. § 1962

224.  Defendants "Engaged in Using an Enterprise to Launder Money by a Pattern of Racketeering Activity" in violation of 18 U.S.C. § 1962 (a).

225. Defendants "Engaged in Acquiring or Maintaining an Interest in an Enterprise through a Pattern of Racketeering Activity" in violation of 18U.S.C. § 1962 (b).

226. Defendants "Engaged in Operating or Managing an Enterprise through a Pattern of Racketeering Activity" in violation of 18U.S.C. § 1962 (c).

227. Defendants "Conspired to Engage in Racketeering" in violation of 18 U.S.C. § 1962 (d).

## 20.   Notice of Statute of Limitations

228. Pursuant to *Agency Holding Corp. v Malley-Duff & Associates, Inc.*, 483 U.S. 143 (1987), a four-year limitations period applies to civil claims brought under the Racketeer Influenced and Corrupt Organizations Act. Pursuant to *Rotella v. Wood*, 528 U.S. 549 (2000) RICO's statute of limitations begins to run when the victim knew of its injury.

## 21.   Notice of Relief

229. Pursuant to Title 18, United States Code, Section 1964 (c), Plaintiff give notice to the Defendants, that in the event of a finding for the Plaintiff, Plaintiff intends to

**COMPLAINT**

seek a money judgment in an amount equal to threefold the damages and his costs of the suit, including costs of investigation, for which the Defendants may be jointly and severally liable.

## 22.   Plaintiff Has Constitutional Standing. Article III of the U.S. Constitution. *Lujan v. Defenders of Wildlife*

230. A party seeking to use this district court must present an "actual controversy" in order to satisfy the "case or controversy" requirement of Article III.

231. The Defendants are harassing him, smearing his good name, and using courts as a conduit of theft of Kraft's business and property, including his time, based on a fraudulent scheme.

232. The Plaintiff presents an "actual controversy" and thus satisfies the controversy requirement of Article III.

233. Like any other federal court plaintiff, a claimant seeking relief under the RICO Act must also satisfy the three requirements for constitutional standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

234. The law of standing has its roots in Article III's case and controversy requirement. *Summers v. Earth Island Institute*, 555 U.S. 488, 492-93 (2009); *DaimlerChrysler Corporation v. Cuno,* 547 U.S. 332, 340-41 (2006).

235. The U.S. Supreme Court has established a three-part test for standing. The "irreducible constitutional minimum of standing" requires the plaintiff to establish:

98

**COMPLAINT**

First ... an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent," not "conjectural" or "hypothetical." Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

> *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also Summers,* 555 U.S. at 493.

236. The party invoking federal jurisdiction bears the burden of establishing these elements. *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130.

237. As detailed herein, this is a controversy pursuant to Article III of the United States Constitution § 2, cl.1. Kraft has constitutional standing to defeat and end this fraudulent scheme. This complaint details: injury in fact, the first element of *Lujan* at 560-61; that the injury in fact is fairly traceable to the defendants' challenged actions, the second element of *Lujan* at 560-61; and that "it must be likely as opposed to merely speculative that the injury will be redressed by a favorable decision", the third element of *Lujan* at 560-61.

## 23.   The Complaint Satisfies the Standards Set by the Supreme Court of the United States for Complaints in the Federal Court System. *Twiqbal*

238. The Supreme Court of the United States in two cases *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), commonly

99

referred to as *Twiqbal*, has established that plaintiffs suing in federal court must demonstrate that their claims are plausible, rather than simply describing the case in sufficient detail to put the defendants on notice.

239. This complaint: contains well-pleaded factual allegations, the first of the two working principles underlying *Twiqbal*; and the complaint states a plausible claim for relief, the second of the two working principles underlying *Twiqbal*.

240. Pursuant to *Twiqbal* when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. It is Kraft's legal position that his complaint satisfies *Twiqbal*.

241. Plaintiff has standing pursuant to Article III of the U.S. Constitution; the complaint satisfies the standards governing complaints in the federal court system as clarified by the Supreme Court of the United States; and he is entitled to relief.


Respectfully submitted on this 27th day of November 2019.


_____

Plaintiff

Rune Kraft
Kraft Legal | United States
251 Little Falls Drive
Wilmington, DE 19808
302 494 1801
rk@kraft.legal

100

**COMPLAINT**