**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rune Kraft,<br><br>        Plaintiff,<br><br>v.<br><br>Gainey Ranch Community Association, *et al.*,<br><br>        Defendants. | No. CV-19-05697-PHX-JJT<br><br>**ORDER** |

      At issue is Plaintiff's Motion for Recusal (Doc. 12), which the Court addresses in short first. Plaintiff seeks recusal of the undersigned judge on the grounds that he is part of and condones the "cesspool of corrupt incestuous relationships" (Doc. 12 at 11) that allegedly exists between the attorney bar in Maricopa County and the judicial officers of the same. Plaintiff wrongly contends that because of his current position as an Article III Judge assigned to the District of Arizona and a former litigator who practiced in Maricopa County, the undersigned has a bias against Plaintiff. But Plaintiff provides no evidence to show such bias exists or that the undersigned otherwise lacks impartiality or objectiveness. Accordingly, the Court denies Plaintiff's Motion for Recusal.

      Also at issue is Defendants' Amended Motion to Dismiss (Doc. 27) to which Plaintiff filed a Response (Doc. 32) and Defendants filed a Reply (Doc. 34). Because the Court determines Plaintiff lacks standing, it *sua sponte* dismisses the action.

      Plaintiff's 100-page Complaint (Doc. 1, "Compl.") is filed against Defendants Gainey Ranch Community Association (the "Association"), a planned community's

property association in Scottsdale; Karen Epstein, the current president of the Association; Jim Funk, the Association's Secretary; and Charlene Cruz, Maureen Connolly, Marion Mulcahy, Paige Marks, and Lauren Vie, individuals who have served as attorneys for the Association in the past. (Compl. ¶¶ 5–12.)

According to the Complaint, Plaintiff at one point owned property in the Gainey Ranch community. However, he "sold it to a corporation" in May 2011. (Compl. ¶ 19.) Plaintiff "has not been the owner of this real property since May 19, 2011 and has thus not made any payments to the Association since May 2011." (Compl. ¶ 22.) Plaintiff alleges that, notwithstanding the fact that he legally owed no payments to the Association after May 2011, the Association filed a hoax action, "fabricated out of thin air," against him in August 2015 in the McDowell Mountain Justice Court ("MMJC"). (Compl. ¶¶ 18, 35.) The basis for the action was "founded on property ownership and a dispute over monthly assessments to the Association." (Compl. ¶ 24.) Specifically, the Association sued Plaintiff and an entity called Transcycle for the nonpayment of monthly assessment fees owed to the Association.

From what the Court can discern from the Complaint, Plaintiff alleges the August 2015 lawsuit was "blatantly false and fraudulent" (Compl. ¶ 137) for at least three reasons. First, Plaintiff had no contractual obligation to make monthly payments because he was no longer the owner of the property as of May 19, 2011. (*See, e.g.*, Compl. ¶¶ 23, 26, 140.) According to the Complaint, the MMJC apparently agreed, and Plaintiff was dismissed as an "improper party" in January 2016. (Compl. ¶ 140.) Second, the Association always received all monthly payments it was due—albeit several months, April through June 2015, were deliberately late due to the Association's failure to enter the property and make certain repairs.[1] (Compl. ¶¶ 126–128). Third, Transcycle is and always has been a non-existent entity; therefore, it could not own property, be sued, or take part in the various stages of litigation. (Compl. ¶¶ 26, 143–44, 147.) Any orders or judgments entered against a non-

---

[1] The Court notes here that the Complaint is less than clear about who was allegedly making the monthly payments to the Association. At no point does Plaintiff disclose the identity of "the corporation" who he sold the property to in May 2011 or the owner of the property from April 2015 onward.

existent entity would therefore be void. (Compl. ¶ 147.) Thus, Plaintiff contends Defendants violated several laws and ethical obligations when they filed the fraudulent lawsuit in August 2015.

Plaintiff also asserts that, after he was dismissed from the action, Defendants filed a motion to transfer the action in December 2016. However, according to the Complaint, MMJC had exclusive jurisdiction over the action because, at all times, the amount at issue was less than $10,000. (Compl. ¶ 141.) The case was thus fraudulently transferred to Maricopa County Superior Court under the fraudulent pretense that the amount in controversy exceeded $10,000.

In July 2017, the case ended up in federal court, where Defendants "caused fraudulent statements and documents to be filed." (Compl. ¶ 177.) Specifically, Defendants made false statements concerning who had the obligation to pay the Association; that the monthly assessments were unpaid when in fact they were paid; the citizenship of various entities for jurisdictional purposes; and the Association's billing practices purportedly related to legal services. (Compl. ¶ 177.)

In September 2017, Defendants knowingly "caused fraudulent applications for default and entry of default to be filed at the Maricopa County Superior Court." (Compl. ¶ 178.) In October 2017, they made more fraudulent statements to the Maricopa County Superior Court, much like the fraudulent statements made to the federal court in July 2017. (Compl. ¶ 179.) In July 2018 and November 2018, Defendants falsely stated to the Arizona Court of Appeals that Plaintiff had been served with various documents. (Compl. ¶¶ 180–81.)

Plaintiff alleges violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.* RICO makes it illegal for any person "to conduct or participate, directly or indirectly, in the conduct of [an] enterprise's affairs through a pattern of racketeering activity," where that enterprise affects interstate commerce. 18 U.S.C. § 1962(c). The Act also provides a private right of action for "treble damages to any person injured in his business or property by reason of the conduct of a qualifying enterprise's affairs" through a pattern of so-called "predicate acts." *Bridge v. Phoenix Bond*

*& Indem. Co.*, 553 U.S. 639, 647 (2008); *see also* 18 U.S.C. § 1964(c). The Complaint alleges Defendants constitute an enterprise-in-fact that, in carrying out the above fraudulent scheme, engaged in a pattern of racketeering by committing the predicate acts of wire fraud, mail fraud, obstruction of justice, and conspiracy to commit money laundering. (*E.g.*, ¶¶ 91–107.) *See* 18 U.S.C. § 1961(1).

"To have standing under § 1964(c), a civil RICO plaintiff must show: (1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was 'by reason of' the RICO violation, which requires the plaintiff to establish proximate causation." *Canyon Cty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008). "Without a harm to a specific business or property interest—a categorical inquiry typically determined by reference to state law—there is no injury to business or property within the meaning of RICO." *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005).

The crux of the Complaint is that Defendants used the mail, wires, and legal process to effectuate a fraudulent scheme in the form of a fraudulent lawsuit against Plaintiff related to a property he has not owned since May 2011. Plaintiff's RICO claims fail because he has not asserted any specific injury to his business or property. The Complaint notes generally the purpose of Defendants' scheme is to accumulate wealth and obtain money and property by fraudulent means, (*e.g.*, Compl. ¶¶ 72–82), but never explains how Defendants accomplished this with respect to Plaintiff's business or property. To the contrary, the Complaint is clear that Defendants' actions were taken for the purpose of embarrassing and harassing Plaintiff. (*E.g.*, Compl. ¶¶ 20, 28, 149 n.13.) And while the Complaint conclusorily alleges Defendants also stole Plaintiff's "business and property," (*e.g.*, 20, 82), it lacks any factual support for this.

Indeed, Plaintiff *cannot* support a RICO claim under this framework of facts because he willingly sold the property four years before Defendants' lawsuit against him— a fact made abundantly clear in the Complaint. Thus, not only does the Complaint fail to assert a business or property interest that was harmed, it also fails to allege the very

existence of a business or property right under state law that could be harmed by Defendants' pattern of racketeering as alleged.

However, because it is possible for Plaintiff to assert a business or property interest that has been injured by Defendants' conduct, he is entitled to amend his Complaint. Plaintiff shall only file an amendment if he is able to cure the Complaint's deficiencies. Failure to cure the deficiencies will result in dismissal with prejudice. Further, Plaintiff's amended pleading must comply with Rule 8, which requires a *short and plain statement* of the claim. Plaintiff must comply with all Local Rules in making all future filings, including and in particular LRCiv 7.1(c). Failure to do so will result in the Court striking his filings or assessing sanctions. Failure to comply with any of these Rules may result in dismissal of this action.

**IT IS THEREFORE ORDERED** denying Plaintiff's Motion for Recusal (Doc. 12).

**IT IS FURTHER ORDERED** dismissing Plaintiff's Complaint (Doc. 1) without prejudice for lack of statutory standing. Plaintiff has 14 days to file his First Amended Complaint.

**IT IS FURTHER ORDERED** denying Defendants' Motion to Dismiss (Doc. 27).

**IT IS FURTHER ORDERED** denying Plaintiff's first Motion for Order to Show Cause (Doc. 33). The Court did not rely on Defendants' Motion to Dismiss in determining whether Plaintiff had proper standing to assert a RICO claim.

**IT IS FURTHER ORDERED** denying Plaintiff's second Motion for Order to Show Cause (Doc. 37). The Court did not rely on Defendants' Reply in assessing whether Plaintiff had proper standing to assert a RICO claim and did not rely on Defendants' Response to Plaintiff's First Order to Show Cause.

Dated this 6th day of July, 2020.

Honorable John J. Tuchi
United States District Judge